**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS, TYLER DIVISION**

| | |
|---|---|
| KERRY MAX COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **6:17cv333-RWS** |
| | ) **Judge Schroeder** |
| CITY OF TYLER, Texas, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS SMITH, WICKHAM,
<u>AND MCLEROY'S MOTIONS TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

PLAINTIFF'S COMPLAINT................................................................................................3

PLAINTIFF'S DETAILED COMPLAINT SATISFIES RULE 8 .................................3

    A.  The Allegations In Plaintiff's Complaint Easily Satisfy The Plausibility
        Threshold Defined By *Twombly* and *Iqbal* ..................................................4

    B.  Contrary to Defendants' Claim That They Are Hardly Mentioned in the Complaint,
        Defendants Smith, Wickham, and McLeroy's Conduct Has Been Amply Pled ...........5

    C.  Defendant Smith's Argument Against The Supervisory Liability Claim
        Misapprehends the Law of Supervisory Liability and Distorts the Complaint's
        Straightforward Allegations of His Involvement.........................................................8

    D.  Defendants' Requests For a More Definite Statement Under Rule 12(e) Cannot Be
        Used To Circumvent the Liberal Notice-Pleading Standards of Rule 8 And Should
        Be Denied...........................................................................................................10

DEFENDANTS ARE NOT ENTITLED TO DISMISSAL BASED ON
QUALIFIED IMMUNITY ...................................................................................................11

    1.  Defendants' Cursory Arguments Amount To A Waiver ............................................11

    2.  Defendants' Qualified Immunity Defense Lacks Merit..............................................12

CONCLUSION.....................................................................................................................15

## TABLE OF AUTHORITIES

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................. 14

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ................................................................12

*Bolton v. City of Dallas*, 541 F.3d 545 (5th Cir. 2008) ............................................ 11

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009)..............................................................8

*Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008) ..........................................................15

*Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009)........................................................8

*Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256 (5th Cir. 1995)....................13

*Chavez v. De La Paz*, 156 F. App'x 694 (5th Cir. 2005)........................................5, 12

*Cousin v. Small*, No. CIV. A. 00-0069, 2000 WL 1100384 (E.D. La. Aug. 4, 2000)....................8

*Crisp v. Dutton*, No. A-15-CV-0431-LY-ML, 2015 WL 7076483
    (W.D. Tex. Nov. 12, 2015) ....................................................................................8

*Cuvilier v. Taylor*, 503 F.3d 397 (5th Cir. 2007)........................................................4

*Faulkner v. Johnson County Sheriff's Dept.*, 2001 WL 322430 (N.D.Tx. Mar. 30, 2001) ..........16

*Gonzalez v. Kay*, 577 F. 3d 600 (5th Cir. 2009) .........................................................4

*Good v. Curtis*, 601 F.3d 393 (5th Cir. 2010)............................................................14

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) ........................................................9, 10

*Huff v. Refugio Cty. Sheriff's Dep't*, No. 6:13-CV-00032, 2013 WL 5574901
    (S.D. Tex. Oct. 9, 2013)........................................................................................8

*Indian Harbor Ins. Co. v. Bestcomp, Inc.*, 452 Fed.Appx.560 (5th Cir. 2011) .............13

*Jenkins v. Lee*, No. CIV. A. 98-2367, 1999 WL 97931 (E.D. La. Feb. 17, 1999)..........8

*Kincheloe v. Caudle*, 2010 WL 1170604 (W.D. Tex. 2010) ........................................11

*Koerner v. Vigilant Ins. Co.*, 2016 WL 4728902 (E.D.La. Sep. 12, 2016).................. 11

*Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126 (5th Cir. 1959) ................................11

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ....................................................11

*Morgan v. Hubert*, 335 F. App'x 466 (5th Cir. 2009) ...................................................................7

*Napue v. Illinois*, 360 U.S. 264 (1959) ........................................................................................14

*Owen v. City of Independence, Mo.*, 445 U.S. 622 (1980) ..........................................................11

*PA Advisors, LLC v. Google, Inc.*, Civil Action No. 2:07-CV-480-DF, 2008 WL 4136426
(E.D. Tex. Aug. 8, 2008) .................................................................................................12

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).....................................................................11

*Pyle v. Kansas*, 317 U.S. 213 (1942) ...........................................................................................14

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)..........................................................................16

*Shipp v. McMahon*, 234 F.3d 902 (5th Cir. 2000) .......................................................................16

*Sipco, LLC v. Amazon.com, Inc.*, 2009 WL 10675145 (E.D.Tx. Mar. 23, 2009)...................11, 12

*United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255 (5th Cir. 2014) .....................................5

*United States v. Stalnaker*, 571 F.3d 428 (5th Cir. 2009).........................................................4, 13

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013)..........................................................................10

*Winfrey v. San Jacinto Cty*, 481 Fed. Appx. 969 (5th Cir. 2012) .................................................11

*Wooley v. City of Baton Rouge*, 211 F.3d 913 (5th Cir. 2000) .....................................................15

## OTHER AUTHORITIES

FED. R. CIV. P. 8(a).......................................................................................................................4

Plaintiff Kerry Max Cook, by and through his attorneys, Loevy & Loevy, hereby respectfully submits this opposition to Defendants J.B. Smith's, Robert Wickham, and Marvin McLeroy's Motions to Dismiss, as follows:

<u>**INTRODUCTION**</u>

Plaintiff Kerry Max Cook's case stems from one of the most notorious wrongful convictions in American history. Plaintiff was wrongfully convicted of a 1977 rape and murder in Tyler, Texas. He was completely innocent of the crime. Indeed, despite the brutal nature of the crime, none of the blood, hair or other physical evidence from the scene has ever tied Plaintiff to the crime. By contrast, DNA testing has conclusively established that semen from the victim's married, disgruntled ex-lover, James Mayfield, was found on the underwear worn by the victim when she died. Ample additional evidence available from the early days of the investigation also pointed to Mayfield: the victim's roommate reported that immediately after the murder, she saw Mayfield in the victim's bedroom, where her body was found the next morning; Mayfield had just been fired from his university job because of his extramarital affair with the victim; prior to the crime Mayfield was reported to have possessed a law enforcement treatise on sex crimes containing examples of sexual mutilation similar to what was done to the victim; and after the crime Mayfield was reported to have been asking how to beat a polygraph test. Finally, Mayfield recently admitted that he had sex with the victim the day before her murder and that he had given false and perjurous trial testimony leading to Plaintiff's conviction. It was this last straw that broke the camel's back: in 2016, with the agreement of the Smith County District Attorney's Office, a Texas court granted Plaintiff's writ of habeas corpus. (*E.g.*, Dkt. 1, Complaint, at ¶¶ 1-9.)

In his Complaint, Plaintiff alleges that based on the "sexually deviant" acts inflicted on the victim, the Defendants set out to pin the murder on someone who was homosexual. Specifically, Plaintiff alleges that the Defendants believed he was homosexual and thus made him their target. As alleged in the Complaint, Defendants lacked any credible evidence to suggest that Plaintiff was involved with the crime and set about fabricating evidence to make their case. Plaintiff's wrongful conviction was based entirely on that fabricated evidence. Plaintiff alleges that Defendants manufactured a deliberately false fingerprint analysis, coerced false statements and testimony from a number of witnesses; created knowingly false investigative materials; and then concealed exculpatory evidence and fabricated inculpatory evidence. Plaintiff brings suit to vindicate his constitutional rights and to redress the loss of liberty and hardship that the Defendants have caused. (*E.g.*, Dkt. 1, Complaint, at ¶¶ 1-9.)

Most the Defendants named in this case have responded to Plaintiff's Complaint by filing Answers. (Dkts. 6-7.) That approach is appropriate, given that Plaintiff's detailed, 32-page Complaint clearly and plausibly alleges egregious constitutional misconduct by police officers that, if proved at trial, would certainly entitle Plaintiff to a judgment in his favor. Three Defendants, however, have filed bare-bones motions to dismiss challenging the sufficiency of these same allegations.[1] Their motions are perfunctory, making it difficult to discern what exactly is being argued with respect to Rule 12(b)(6). The motions recite the legal standards applicable to motions to dismiss and qualified immunity, but then provide virtually no explanation of why these particular Defendants are entitled to either qualified immunity or

---

[1] Defendant Larry Smith has also filed a motion to dismiss. Dkt. 10. He has been sued in his official capacity only, as the current sheriff of Smith County. Defendant Smith asks to be dismissed from this case because the official capacity claims against him are redundant of the claims against Smith County. Dkt. 10, at 2. While the claims against him are allowable under Plaintiff's *Monell* theory, as the Smith County Sheriff is responsible for the policies and practices of the Sheriff's Office, there is little practical effect to dismissing Defendant Smith so long as the County remains in the case. In the interest of cooperation and efficiency, therefore, Plaintiff does not oppose Defendant Larry Smith's motion to dismiss.

otherwise to a dismissal of Plaintiff's allegations against them. Such undeveloped and cursory arguments should be deemed waived. *See United States v. Stalnaker*, 571 F.3d 428, 440-41 (5th Cir. 2009). Furthermore, on the merits, their arguments do not withstand scrutiny and certainly do not warrant dismissal of Plaintiff's claims.  After suffering the nightmare of a wrongful incarceration for twenty-two years – eighteen of them on death row – it is time for discovery to proceed so Plaintiff can have his day in court. For the reasons below, Plaintiff respectfully submits that the Court should deny the motions.

## PLAINTIFF'S COMPLAINT

Totaling 154 paragraphs and 32 pages, Plaintiff's Complaint sets out in rich detail how the Defendants' misconduct violated his constitutional and state-law rights and caused his wrongful conviction. *See* Complaint ("Compl."), Dkt. 1. Instead of reiterating the Complaint's extensive narrative in this brief, Plaintiff incorporates his allegations here by reference, *see* Ex. A (Compl., Dkt. 1), and discusses relevant excerpts from the Complaint in detail below as necessary to respond to the Defendants' particular arguments. At this stage, as Defendants acknowledge, the Court must construe all of the Plaintiff's factual allegations as true and must draw all reasonable inferences in the Plaintiff's favor.  *Gonzalez v. Kay*, 577 F. 3d 600, 603 (5th Cir. 2009).

## PLAINTIFF'S DETAILED COMPLAINT SATISFIES RULE 8

The Federal Rules permit notice pleading and only require a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Dismissal for failure to state a claim under Rule 12(b)(6) is proper only where the allegations in a complaint, however true, could not raise any claim of entitlement to relief. *Cuvilier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  "A Rule 12(b)(6) motion to dismiss fails unless it appears no relief could be

granted under *any* set of facts that could be proved consistent with the allegations in the complaint." *Chavez v. De La Paz*, 156 F. App'x 694, 696 (5th Cir. 2005) (internal quotation marks and citation omitted). Filled with detailed allegations about the murder investigation, the Defendants' alleged misconduct by fabricating and withholding material evidence, and the injuries sustained by Plaintiff, his complaint plainly suffices.

### A.  The Allegations In Plaintiff's Complaint Easily Satisfy The Plausibility Threshold Defined By *Twombly* and *Iqbal*

The motions to dismiss of Defendants J.B. Smith and Wickham contain identical sections that recite the Rule 12 (b)(6) standard, and *Twombly* and *Iqbal's* plausibility threshold. But both motions essentially stop there. Neither Defendant applies these standards to the facts of this case nor identifies why the allegations fall short of Rule 8.

In fact, Plaintiff's allegations are anything but skeletal or speculative. The Complaint contains more than a hundred paragraphs of detailed factual allegations, all telling a coherent story of misconduct, the sum total of which is more than sufficient to satisfy Rule 8's plausibility threshold. While the Defendants may deny doing what Plaintiff alleges, their denials do not make Plaintiff's allegations less plausible for purposes of Rule 12(b)(6). Indeed, it is not the Court's role at this stage to determine whether Plaintiff's account will ultimately hold up. As the Fifth Circuit declared, "The plausibility standard 'does not give district courts license to look behind [a complaint's] allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (internal citation omitted).

**B.  Contrary to Defendants' Claim That They Are Hardly Mentioned in the
Complaint, Defendants Smith, Wickham, and McLeroy's Conduct Has Been
Amply Pled.**

To the extent that the Defendants are suggesting that Plaintiff has failed to allege what

particular misconduct they each committed, their premise is incorrect. With respect to

Defendants J.B. Smith and Wickham, the Complaint addresses their involvement in the Edwards

investigation in several ways.  First, Plaintiff alleges that Defendant Wickham was a Smith

County sheriff's deputy involved in conducting the Edwards murder investigation, and that

Defendant J.B. Smith was then-Sheriff of Smith County and supervised the investigation, had

full knowledge of the police misconduct and fabrication of evidence, approved it, and set out to

nevertheless ensure Plaintiff's wrongful conviction. Compl. ¶¶ 19-20, 80.

Second, Defendants Smith and Wickham are expressly included in the well-defined

subset of "Police Defendants," whose misconduct is alleged in exacting detail throughout the 32-

page complaint. *See* Compl. ¶ 22 (specifically defining "Police Defendants" to include J.B.

Smith and Wickham). This includes, for example, the specific allegations that the Police

Defendants coerced key witnesses, including Paula Rudolph, Randy Dykes and Rodney Dykes,

to change their stories, *id.* ¶¶ 50-52, 70-71; destroyed a pair of soiled jeans, a hair found on the

victim's buttocks, and other key evidence that would have inculpated the victim's lover (James

Mayfield) and exculpated Plaintiff, *id.* ¶¶ 59-61; created false and fabricated evidence, including

a bogus fingerprint analysis, made-up confessions by Plaintiff to jailhouse snitches and others

(including Defendant Wickham), and fraudulent police reports, *id.* ¶¶ 65-68, 73-76, 78; and

concealed myriad evidence of Plaintiff's innocence and the falsity of the evidence against him,

*id.* ¶¶ 50-53, 59-63, 69-70 , 72-76, 77-79, 81. The Complaint also addressed why Smith County

Sheriff's officials J.B. Smith and Wickham were involved in the Tyler Police Department's

investigation of the Edwards murder, explaining that both agencies are in close proximity and routinely work together. *Id.* at ¶ 26.

Plaintiff's allegations against Defendant McLeroy are also adequately pled. According to the Complaint, Defendant McLeroy was during relevant times an "officer of the Texas Department of Public Safety", and he was "involved in conducting polygraph tests related to the Edwards murder investigation." *Id*. at ¶ 17. He is also expressly named as one of the Police Defendants, against whom Plaintiff made numerous highly specific allegations. Defendant McLeroy is the only Defendant identified in the Complaint as having conducted polygraph examinations during the Edwards investigation. Plaintiff's Complaint then sets forth numerous factual allegations regarding these polygraph exams done in the Edwards case. For instance, Plaintiff alleges that witness Greg Smith was given a polygraph examination and failed the question, "Do you know who killed Linda Jo Edwards?" *Id.* at ¶ 63. Plaintiff alleges that this result was withheld by the Police Defendants (which includes McLeroy), as was reports of the interviews and statements. *Id*. Likewise Plaintiff alleged that the Police Defendants, again a group that includes McLeroy, tampered with the polygraph exam of a jailhouse snitch and then concealed evidence of this tampering. *Id*. at ¶ 74.

In short, Plaintiff's Complaint includes several factual allegations that specifically address the moving Defendants by name, where Plaintiff's knowledge permits this specificity. Other allegations discuss in detail the actions of the Police Defendants, a group that expressly includes each of the moving Defendants.

The Fifth Circuit has explicitly held that, when considering a motion to dismiss claims brought under section 1983, "we do not require a plaintiff to plead facts peculiarly within the knowledge of defendants." *See Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009)

(internal quotations omitted). Following this principle, district courts routinely permit well-pleaded allegations of misconduct to proceed, even absent specific allegations as to which defendant officer did what. *See, e.g.*, *Crisp v. Dutton*, No. A-15-CV-0431-LY-ML, 2015 WL 7076483, at *9 (W.D. Tex. Nov. 12, 2015) (noting that there is no requirement "that a plaintiff who alleges [constitutional] claims against police officers working in a group must be able to identify, from his own personal knowledge and without the benefit of any discovery, which individual officer committed each act . . . in order to survive a 12(b) (6) motion"); *Huff v. Refugio Cty. Sheriff's Dep't*, No. 6:13-CV-00032, 2013 WL 5574901, at *3 (S.D. Tex. Oct. 9, 2013) (finding that an allegation that multiple officers were present during the constitutional violation was "more than sufficient at the pleading stage, even under the heightened standard applied to public officials sued in their individual capacity"); *Jenkins v. Lee*, No. CIV. A. 98-2367, 1999 WL 97931, at *5 (E.D. La. Feb. 17, 1999) ("Simply stated, the plaintiffs have pleaded that the individual officers were directly and personally involved in constitutional violations and tortious conduct against them. This satisfies the personal involvement requirement for stating a section 1983 claim."). *Cf. Cousin v. Small*, No. CIV. A. 00-0069, 2000 WL 1100384, at *3 (E.D. La. Aug. 4, 2000) (declining to require plaintiff to "provide a more definite statement of who participated in the various alleged conspiracies" where plaintiff's complaint generally "accuses specific individuals of conspiring").[2] This approach makes sense, as it is the Defendant – not the Plaintiff – who is in the best position to know his specific involvement in the Edwards investigation, particularly at the pleadings stage before any discovery has commenced.

---

[2] This approach is consistent with how other Circuit Courts of Appeals address "group pleading" arguments at the Rule 12(b)(6) stage. *See, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (finding a complaint alleging that all members of a group of defendants engaged in misconduct unobjectionable); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (holding that a prisoner's statement that he repeatedly alerted a group of medical personnel to his medical condition and they did nothing in response, causing injury, stated a claim so long as the complaint at some point named all of the medical personnel involved).

To demand a greater degree of specificity from the Plaintiff than the Federal Rules require, without any discovery, would unfairly thwart Plaintiff's right to pursue his claim.

Additionally, Plaintiff's Complaint alleges that these Defendants acted "individually, jointly, and in conspiracy with one another" to frame Plaintiff for a crime he did not commit. *See, e.g.*, *id.* ¶¶ 95, 103. These allegations of joint action are entirely appropriate. By conspiracy alone, Defendants Smith, Wickham, and McLeroy can be liable for each substantive violation of Plaintiff's rights, as alleged in Counts I, II, III, and IV, so long as each participated in the conspiracy. *See, e.g., Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (§ 1983 conspiracy liability theory).

Because Plaintiff has met Rule 8's liberal notice-pleading requirements, Defendants' recourse – and the course followed by all of the other named Defendants in this case – is to admit, deny, or claim lack of knowledge as to each allegation Plaintiff has pleaded, consistent with that particular Defendant's view of the truth. Their recourse is not to file a dispositive motion arguing that Plaintiff's allegations are implausible or so bare-bones as to violate the notice pleading requirements of the Federal Rules.[3]

### C. Defendant Smith's Argument Against The Supervisory Liability Claim Misapprehends the Law of Supervisory Liability and Distorts the Complaint's Straightforward Allegations of His Involvement.

Defendant J.B. Smith's motion to dismiss raises an additional argument that he cannot be liable under a theory of supervisory liability. (Dkt. 8, at 5.) Defendant Smith misunderstands Plaintiff's allegations against him. To be clear, Plaintiff is not relying on *respondeat superior* to make a claim against Defendant Smith. Plaintiff's allegations are not that Defendant Smith is liable based solely on the fact that his subordinate broke the law; to the contrary, the allegation is

---

[3] For the reasons stated herein, Plaintiff believes that his Complaint is extremely detailed and exceeds the requirements of Rule 8, but if this Court should find the Defendants' plausibility arguments persuasive, Plaintiff respectfully seeks leave to amend his complaint.

that he himself violated Plaintiff's constitutional rights. As set forth above, Plaintiff alleges that Smith directly participated in a corrupt homicide investigation through his role as a supervisor – a role from which he "knew full well" of the police misconduct and fabrication of evidence, "intentionally ignored and approved" it, and "decided to make Plaintiff responsible for a crime he did not commit." Compl.¶¶  19-20, 80. This is in addition to Plaintiff's numerous factual allegations against the Police Defendants, which includes Defendant Smith. The fact that Smith bore the title of supervisor while working directly on the case does not somehow immunize him from liability. Likewise, Plaintiff has alleged that Defendant Smith participated in a conspiracy to frame Plaintiff for a crime he did not commit and to cover-up the evidence of misconduct; here, too, Defendant Smith's argument about supervisory liability is unavailing. Compl. ¶¶ 129-134.

Finally, Plaintiff's allegations against Defendant Smith are also sufficient to establish his direct liability for his failure to intervene in the unconstitutional actions taken by their co-Defendants. Compl. ¶¶ 135-139. Police officers, including supervisory employees such as Defendant Smith, have a constitutional obligation to intervene and to halt constitutional violations, including due process and *Brady* violations such as alleged here. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (recognizing § 1983 failure to intervene liability theory); *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (summarizing bystander liability as where "the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act") (internal citations omitted).[4]

---

[4] In the qualified immunity section of his brief, Defendant J.B. Smith makes a passing reference to the fact that Plaintiff contends that J.B. Smith was a final policymaker for the Sheriff's Office, which does not create individual capacity liability for Defendant Smith. (Dkt. 8, at 5.) This is true. But to be clear, in addition to being liable in his individual capacity for the reasons set forth above, Defendant Smith is also liable in his official capacity (and by

### D.  Defendants' Requests For a More Definite Statement Under Rule 12(e) Cannot Be Used To Circumvent the Liberal Notice-Pleading Standards of Rule 8 And Should Be Denied.

Defendants J.B. Smith and Wickham ask the Court to order a more definite statement pursuant to Rule 12(e), Dkt. 8 at 6-7; Dkt. 12 at 5-6, which provides for such relief when the complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(E). According to these Defendants, a more definite statement is required because Plaintiff's Complaint does not provide them with notice of what misconduct is specifically attributed to each of them.

This argument is misplaced. Rule 12(e) motions should be granted only when the Complaint is "so vague that the moving party cannot reasonably be required to frame a responsive pleading." *Sipco, LLC v. Amazon.com, Inc.*, 2009 WL 10675145, at *1 (E.D.Tx. Mar. 23, 2009), citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959). The Fifth Circuit has instructed the district courts to evaluate Rule 12(e) motions in light of Rule 8's liberal notice-pleading requirements. *Koerner v. Vigilant Ins. Co.*, 2016 WL 4728902, at *1 (E.D.La. Sep. 12, 2016) (noting that Rule 12(e) motions are disfavored).  Put more bluntly, "Rule 12(e) should not be used "to frustrate [the liberal notice pleading of Rule 8] by ... requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Id.* at

---

extension, so is the Smith County Sheriff's Office and Smith County). Plaintiff alleges that Smith County and the Smith County Sheriff's Department are liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for policies and practices that caused Plaintiff's unconstitutional wrongful conviction. "It is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."); *Kincheloe v. Caudle*, 2010 WL 1170604, at *8 (W.D. Tex. 2010). Plaintiff alleges that Defendant J.B. Smith was the final policymaker for the Smith County Sheriff's Office, Compl. ¶ 20. This allegation must be taken as true at the motion to dismiss stage, and more than satisfies the plausibility standard since sheriffs are routinely found to be a county's policymaking authority in the area of law enforcement. *See, e.g.*, *Winfrey v. San Jacinto Cty*, 481 Fed. Appx. 969, 981 (5th Cir. 2012) citing *Praprotnik*, 485 U.S. at 123-17. As such, because Defendant Smith is the final policymaker for Smith County, the County may be found directly liable to Plaintiff. And, it is well-established that municipalities are not entitled to qualified immunity. *See Owen v. City of Independence, Mo.*, 445 U.S. 622 (1980).

132. If the "detail or information sought by the motion for more definite statement is obtainable through discovery," the Rule 12(e) motion should be denied. *Sipco, LLC*, 2009 WL 10675145, at *1, citing *PA Advisors, LLC v. Google, Inc.*, Civil Action No. 2:07-CV-480-DF, 2008 WL 4136426, at *4 (E.D. Tex. Aug. 8, 2008). Here, several Defendants were able to "frame a responsive pleading" by way of answering the complaint, and the moving Defendants assert qualified immunity as to the allegations against them, both of which evidence the sufficiency of the Complaint for Rule 8 purposes. For the foregoing reasons, Defendants' request for a more definite statement should be denied.

## DEFENDANTS ARE NOT ENTITLED TO DISMISSAL BASED ON QUALIFIED IMMUNITY

Defendants Wickham, J.B. Smith, and McLeroy seek the protections of qualified immunity yet fail to identify which of Plaintiff's many allegations of misconduct they believe are "objectively reasonable" or which constitutional rights they contend were not clearly established at the time of the alleged misconduct (or even that they are arguing the "clearly established" prong of this defense). On the merits, Defendants' assertion of qualified immunity is defeated at this stage of the case because Plaintiff's Complaint sufficiently alleges conduct that (1) violates the Constitution and (2) was "objectively unreasonable in the light of the clearly established law at the time of such conduct." *Chavez v. De La Paz*, 156 F. App'x 694, 696 (5th Cir. 2005). When considering qualified immunity "[a]t [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized . . . ." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original).

### 1.    Defendants' Cursory Arguments Amount To A Waiver.

As a threshold matter, the moving Defendants' failure to develop their qualified immunity argument comes with a price: it is difficult if not impossible to decipher why the

Defendants believe they are entitled to qualified immunity, other than their self-serving claim to be acting in "good faith," and therefore it is difficult to identify what arguments require a response from Plaintiff. Neither Defendant discusses any of the relevant aspects of qualified immunity analysis. Neither Defendant explains why the allegations in the Complaint are insufficient to state a constitutional violation, despite a Counts section that lays out each of the various theories of liability,  nor do they cite any cases or otherwise explain why the various forms of constitutional misconduct alleged in the Complaint were not clearly established. Their only legal support is for the general proposition that the qualified immunity doctrine exists, not that it should be available to these Defendants against the allegations in this case.

Under Fifth Circuit law, Defendants' arguments are thoroughly undeveloped and should be deemed waived. *See Indian Harbor Ins. Co. v. Bestcomp, Inc.*, 452 Fed.Appx.560, 566 at fn. 3 (5th Cir. 2011) (arguments presented in conclusory fashion are not considered), citing *United States v. Stalnaker*, 571 F.3d 428, 440-41 (5th Cir. 2009) (concluding that undeveloped arguments that lacked citations to relevant law were waived for inadequate briefing); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n. 9 (5th Cir. 1995) ("the failure to provide any legal or factual analysis of an issue results in waiver of that issue").[5]

### 2. Defendants' Qualified Immunity Defense Lacks Merit

The absence of argument or legal citation supporting Defendants' qualified immunity defense is unsurprising. The purpose of qualified immunity is to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions."

---

[5] Defendants also conflate their attack on the specificity of the Complaint with their qualified immunity defense. Arguments that Plaintiff has not sufficiently alleged the moving Defendants' personal involvement are distinct from arguments that the Defendants' conduct did not violate clearly established constitutional rights. For the reasons set forth in the earlier section of this brief, Plaintiff has sufficiently alleged Defendants' personal involvement in the constitutional violations.

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). The misconduct alleged in the Complaint cannot possibly fit within the contours of that defense: intentional fabrication of inculpatory evidence, and withholding *Brady* material from a criminal defendant, are not "reasonable but mistaken judgments about open legal questions." Tellingly, the moving Defendants do not argue otherwise. Instead, they simply ignore the specific allegations of misconduct and suggest that as government employees acting "in good faith," they should be immune. But the law of qualified immunity does not allow for this result; Plaintiff's claims rest on allegations of egregious investigative misconduct that, if proven, amount to intentional violations of long-held and clearly established constitutional protections. There is no qualified immunity for intentional violations of clearly established rights.

For instance, Plaintiff alleges that the police investigators, including the moving Defendants, fabricated "confessions" that Plaintiff supposedly made to various jailhouse snitches and others. Compl. ¶¶ 64-65, 73-75. As noted above, Plaintiff has alleged that the Defendants fabricated other evidence as well. The Fifth Circuit has held that state actors are not entitled to qualified immunity for fabricating evidence. *See Good v. Curtis*, 601 F.3d 393, 398-400 (5th Cir. 2010) (concluding that fabricating false evidence to use in criminal proceedings constitutes a "knowing violation of the law," and "any officer so acting would not be entitled to immunity."). Even if qualified immunity were not defeated automatically in cases where state actors fabricate false evidence used to secure a criminal conviction, this constitutional prohibition was clearly established long before the fabrication of evidence alleged by Plaintiff in this case. *See*, *e.g.,* *Napue v. Illinois*, 360 U.S. 264 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."); *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942) (holding that police

who threaten a witness to give false testimony violate the due process clause of the Fourteenth Amendment).

So, too, with Plaintiff's *Brady*-related claims. To the extent the moving Defendants are asserting qualified immunity for withholding exculpatory or impeaching evidence from the Plaintiff, that argument also must be rejected as entirely unsupported. There can be no question that it was clearly established in 1977 that suppressing exculpatory evidence was unconstitutional. *See, e.g., Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008) ("By 1967, a public official's concealment of exculpatory evidence was a constitutional violation in this circuit.").

At bottom, the intentional misconduct alleged against Defendants Wickham, JB Smith, and McLeroy simply does not jibe with the qualified immunity doctrine. Under the first prong, it is well-settled that deliberately interfering with a criminal defendant's right to due process and a fair trial by fabricating inculpatory evidence and withholding or concealing exculpatory/impeachment evidence would, if proven, amount to a constitutional violation. Under the second program, the prohibitions against fabricating evidence and against withholding evidence were well-settled long before the Edwards murder, and thus the Defendants cannot claim that such behavior was considered "objectively reasonable." Put differently, "all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions sued on." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 918-19 (5th Cir. 2000).

Unsurprisingly, none of the Defendants actually argues that it was "objectively reasonable" to fabricate a confession, a fingerprint expert's analysis, and other evidence, *see, e.g.,* Compl. ¶¶ 6, 66, 68, 97; to conceal clearly exculpatory information, *e.g., id.* ¶¶ 96; or to

conspire with the other Defendants in this frame-up and cover-up, *e.g., id.* ¶¶ 129-134 (Count VI).  Their attempt to jettison Plaintiff's claims with the mere invocation of the qualified immunity doctrine should fail.

So, too, should their request that Plaintiff file a reply. While in some instances it may be appropriate to require such a reply in response to a qualified immunity defense, that is only true "when the complaint itself does not meet the required standard – 'that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'" *Faulkner v. Johnson County Sheriff's Dept.*, 2001 WL 322430, at *3 (N.D.Tx. Mar. 30, 2001), citing *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995).  Thus when "the pleadings on their face show an unreasonable violation of a clearly establish constitutional right," an assertion of qualified immunity is insufficient by itself to prevail on a motion to dismiss. *Shipp v. McMahon*, 234 F.3d 902, 912 (5th Cir. 2000).

## <u>CONCLUSION</u>

Plaintiff Kerry Max Cook respectfully asks this Court to deny the Defendants' motions to dismiss. His Complaint contains a lengthy, detailed account of the misconduct he alleges and the injuries he sustained as a result. Hardly a boilerplate document lacking in facts, Plaintiff's complaint spans more than one hundred allegations and 32 pages. His allegations exceed the requirements of Rule 8, and this his Rule 12(b)(6) motion and Rule 12(e) request for a more definite statement should be denied. As to qualified immunity, the type of misconduct Defendants are alleged to have committed amount to clear, intentional violations of Plaintiff's constitutional rights –  rights which were well-established long before the Edwards investigation took place. Qualified immunity is not available here, and Defendants' cursory invocation of that doctrine does not warrant dismissal of Plaintiff's claims.

RESPECTFULLY SUBMITTED,

  /s/     Anand Swaminathan
*One of Plaintiff's Attorneys*

*Attorneys for Plaintiff*
Mike Kanovitz
Roshna Bala Keen
Anand Swaminathan
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
312-243-5900
anand@loevy.com

16

## <u>CERTIFICATE OF SERVICE</u>

I, Anand Swaminathan, an attorney, hereby certify that on September 20, 2017, I filed the foregoing response via the Court's electronic filing system, which effected service on all counsel of record.

<u>/s/ Anand Swaminathan</u>
*Counsel for Kerry Max Cook*