| | | |
|---|---|---|
| KERRY MAX COOK, | § | |
| | § | |
| | § | CIVIL ACTION NO. 6:17-CV-00333-RWS |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF TYLER, TEXAS, SMITH | § | |
| COUNTY, TEXAS, EDDIE CLARK, ERIC | § | |
| LIPTAK, DOUGLAS COLLARD, | § | |
| ROBERT BOND, GERALD HAYDEN, | § | |
| NELSON DOWNING, FRED MAYO, | § | |
| KENNETH FINDLEY, RONALD SCOTT, | § | |
| RONNIE MALLOCH, MARVIN T. | § | |
| MCLEROY, STUART DOWELL, | § | |
| ROBERT WICKHAM, JAKE MASSEY, | § | |
| J.B. SMITH, GENE CARLSON, | § | |
| UNKNOWN TYLER POLICE OFFICERS, | § | |
| UNKNOWN SMITH COUNTY | § | |
| SHERIFF'S DEPUTIES, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants City of Tyler, Texas, and its former police officers, Eddie

Clark, Eric Liptak, Robert Bond, Gerald Hayden, Nelson Downing, Fred Mayo, Kenneth Findley,

and Ronald Scott's (collectively, "City of Tyler Defendants") Motion for Summary Judgment

(Docket No. 60) and Defendants Smith County, Texas, J.B. Smith and Robert Wickham's

(collectively, "Smith County Defendants") Motion for Summary Judgment (Docket No. 63).[1] The

---

[1] Smith County Defendants adopt by reference the motion for summary judgment filed by City of Tyler Defendants. Docket No. 63 at 1. The Court addresses and cites to City of Tyler Defendants' motion for summary judgment (Docket No. 60), unless otherwise indicated.

Court heard argument on the motions on March 7, 2018. Docket No. 74. For the reasons explained below, the parties' motions are **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

Plaintiff Kerry Max Cook has brought the instant action alleging he was wrongfully prosecuted, convicted, imprisoned, and sentenced to death for the 1977 murder of Linda Jo Edwards in Tyler, Texas. Docket No. 78, Am. Compl. ¶ 1.[2] Cook alleges that he was convicted on the basis of a homosexual witch-hunt by the Defendants, during which obvious evidence pointing to the victim's married, 45-year-old ex-lover, James Mayfield, was actively and systemically disregarded, downplayed and concealed. *Id.* ¶ 2. Plaintiff claims that in an attempt to ensure his conviction, the current and former law enforcement Defendants manufactured a deliberately false fingerprint analysis, coerced false statements and testimony from various witnesses, created knowingly and recklessly false investigative materials, concealed crucial exculpatory evidence and fabricated inculpatory evidence. *Id.* ¶¶ 5, 6. Cook alleges he spent more than 20 years in prison as a result of Defendants' misconduct. *Id.* ¶ 7.

In this civil suit, Cook seeks monetary damages under 42 U.S.C. § 1983 from the City of Tyler, the Texas Department of Public Safety, and the Smith County Sheriff's Office, and from Defendants Clark, Liptak, Collard, Bond, Hayden, Downing, Mayo, Findley, Scott, Malloch, McLeroy, Dowell, Wickham, Massey, Smith, and Carlson—all current or former law enforcement officials under these agencies. The City of Tyler Defendants and Smith County Defendants have filed motions for summary judgment and seek a take-nothing judgment against Plaintiff in this action.

---

[2] Plaintiff filed an Amended Complaint on April 12, 2018, after the parties had completed briefing the instant motions and after the Court heard argument. The Amended Complaint does not alter or affect the Court's analysis of the parties' arguments.

The parties agree to the following undisputed material facts which are relevant to the resolution of the motions before the Court:[3]

1. Forty years ago, on June 9, 1977, Linda Jo Edwards, age 21, was brutally murdered and mutilated in an apartment where she was staying with a friend in Tyler, Texas. *Cook v. State*, 821 S.W.2d 600 (Tex. Crim. App. 1991). The grand jury indicted Cook for her murder (Def. Ex. 1).

2. In Cook's first trial, on July 13, 1978, the jury convicted Cook of capital murder and assessed the death penalty. *Cook v. State*, 821 S.W.2d 600 (Tex. Crim. App. 1991).

3. The Texas Court of Criminal Appeals affirmed Cook's conviction and death sentence. *Cook v. State*, 741 S.W.2d 928 (Tex. Crim. App. 1987).

4. The U.S. Supreme Court reversed and remanded Cook's conviction. *Cook v. Texas*, 109 S. Ct. 39 (1988).

5. On remand, the Court of Criminal Appeals held Cook's rights were violated when the State's psychiatrist examined him without giving him an opportunity to consult with his attorney. On rehearing, a divided Court of Criminal Appeals remanded the case for a new trial on that ground. *Cook v. State*, 821 S.W.2d 600, 605 (Tex. Crim. App. 1991).

6. [In 1991,] after Cook's first trial, Jack Skeen was elected District Attorney. Neither District Attorney Jack Skeen nor his First Assistant David Dobbs was involved in the murder investigation in 1977 or in Cook's first trial in 1978.[4]

7. [In 1992,] Cook was tried again. The second trial "ended in a mistrial after the jury was unable to reach a verdict." *Cook v. State*, 940 S.W.2d 623, 624 (Tex. Crim. App. 1996).

8. Cook filed an application for a writ of habeas corpus in 1992. The state district court denied his application and issued a lengthy order addressing Cook's complaints (Def. Ex. 2).

9. [In 1994,] Cook was tried a third time. A witness—Robert Hoehn—had died between the first and third trials. Judge Robert Jones, who presided over the third trial, admitted into evidence the testimony of the deceased witness from the first trial. *Cook v. State*, 940 S.W.2d 623, 627 (Tex. Crim. App. 1996). "The third trial resulted in [Cook's] conviction and Cook was sentenced to death . . . ." *Id.* at 624.

10. [In 1996,] [t]he Court of Criminal Appeals reversed Cook's conviction and remanded the case for a new trial.[5]

---

[3] Docket No. 60 at 2–4, Statement of Undisputed Material Facts; Docket No. 69-1, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts.

[4] Cook denies that Skeen and Dobbs disclosed all prosecutorial misconduct in connection with the first trial. On remand of the second trial, the Court of Criminal Appeals, *en banc*, stated, "[P]rosecutorial and police misconduct has tainted this entire matter from the outset. Little confidence can be placed in the outcome of appellant's first two trials as a result, and the taint, it seems clear, persisted until the revelation of the State's misconduct in 1992. Much of the earlier misconduct by the State was cured prior to appellant's third trial." *Cook v. State*, 940 S.W.2d 623, 627 (Tex. Crim. App. 1996).

[5] The Criminal Court of Appeals sustained Plaintiff's third and fourth points of error that "the Due Process Clause of the Fourteenth Amendment to the United States constitution and the Due Course of Law provisions of Articles I, Sections 13 and 19, of the Texas Constitution prohibited appellant's second retrial because the Smith County District

11. [In 1999,] Cook filed an application for a writ of habeas corpus in federal court against Judge Robert Jones and others. The federal court issued a memorandum opinion and order of dismissal, denying Cook's application.

12. [In 1999,] [p]rior to the start of his fourth trial, Cook entered into a plea agreement. Cook pled nolo contendere to the lesser-included offense of murder (Def. Ex. 4 at pgs. 9, 17). Judge Robert Jones—who had presided over Cook's 1994 trial—took judicial notice of the record of the 1994 trial, except for the testimony of the deceased witness (Def. Ex. 4 at pg. 24).

13. [In 1999,] [t]wo months after the plea agreement resulted in Cook's release from prison, the Dallas Morning News published an article entitled "DNA Doesn't Match Convicted Killer Cook's," which stated "Decades-old DNA from the underwear of a Tyler murder victim matches her ex-boyfriend's, not that of Kerry Max Cook, who recently pleaded no contest to murdering the victim, Linda Jo Edwards." (Def. Ex. 5 at pg. 1). Cook's lawyers said "[t]hey would seek further review of the case and the new evidence, perhaps through a lawsuit, a request for U.S. Justice Department intervention or a motion in state criminal court" (Def. Ex. 5 at pg. 2).

14. [In 2012,] Cook filed a motion for post-conviction DNA testing in state court. Prior to May 1, 2012, Cook learned that some of the physical evidence obtained in the 1977 crime-scene investigation had been lost or destroyed in 2001, two years after the closing of his case (Def. Ex. 6 at pg. 28). The state court allowed new DNA testing on evidence remaining from the 1977 investigation. *Cook v. State*, 2014 WL 806377 (Tex. App. – Tyler 2014, no pet.).

15. [In 2015,] Cook filed another application for a writ of habeas corpus in state court.[6]

16. [In 2016,] [i]n his writ proceeding—now pending in the Texas Court of Criminal Appeals—Cook and the State stipulated that on April 5, 2016, for the first time, James Mayfield, a witness in each of Cook's trials, "admitted that he [Mayfield] had sexual intercourse with Ms. Edwards on June 8th, the day before her murder;" that Mayfield committed perjury when he testified he did not have sexual relations with the victim during the three weeks prior to her death; that Mayfield had never disclosed the truth to the police about his intercourse with the victim on the day before her murder; and that the prosecutors never knew Mayfield had intercourse with the victim on the day before her murder (Def. Ex. 7 at pgs. 281-283).

This stipulation was part of a settlement agreement between the State and Cook, in which the parties agreed to request the Court of Criminal Appeals:

---

Attorney's Office engaged in egregious prosecutorial misconduct during the period of time commencing with the murder investigation and including appellant's first two trials." *Cook v. State*, 940 S.W.2d 623, 625, 628 (Tex. Crim. App. 1996) ("For the reasons stated above, we sustain appellant's third and fourth points of error, reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.").

[6] Plaintiff clarifies: this writ of habeas corpus was filed with the State of Texas on the basis that Mr. Cook's due process rights to a fair trial had been violated and thus his conviction must be set aside. Further answering, Mr. Cook asserted the additional ground of actual innocence because he was at all times wrongfully convicted for a crime he did not commit. Mr. Cook sought the statutory compensation for wrongfully convicted individuals, which in his case due to his 20 years of wrongful imprisonment would have been $1,600,000 under the Texas Wrongful Imprisonment Act, TEX. CIV. PRAC. & REM. CODE § 103.001 et seq." (Docket No. 69-1 at 8).

• to reverse his 1999 felony conviction on the ground that Cook's due process rights were violated by the false testimony of James Mayfield and to grant a new trial to Cook on that ground;
• to dismiss with prejudice all of Cook's other grounds in his application for challenging his conviction; and
• to submit Cook's actual innocence claim to the state district court according to the procedure set by such court (Def. Ex. 7 at pgs. 280-281).

The state court approved this stipulation, settlement agreement, and recommendation to the Court of Criminal Appeals (Def. Ex. 7 at pgs. 290-291). The state court then held a hearing on Cook's claim of actual innocence. After the hearing, the court entered findings of fact and conclusions of law recommending that the Court of Criminal Appeals deny Cook's claim of actual innocence (Def. Ex. 7 at pgs. 292-314).

Plaintiff filed this suit on June 5, 2017, alleging: due process violations under §1983 and the Fifth and Fourteenth Amendments (Count 1); malicious prosecution and illegal detention under § 1983 and the Fourth and Fourteenth Amendments (Count 2); violations of substantive due process under the Fourteenth Amendment, including fabricating false evidence, deliberately withholding material exculpatory evidence from Plaintiff, providing false inculpatory evidence used to obtain Plaintiff's wrongful conviction and coercing witnesses to testify falsely and provide false statements used to convict Plaintiff (Count 3); destruction of evidence under § 1983 (Count 4); *Monell* liability claims against the City of Tyler and Smith County under § 1983 (Count 5); conspiracy to deprive constitutional rights under § 1983 (Count 6); failure to intervene by the Defendants to prevent the violation of his constitutional rights under § 1983 (Count 7); malicious prosecution under state law (Count 8); intentional infliction of emotional distress under state law (Count 9); *respondeat superior* under state law (Claim 10); and indemnification under City of Tyler Ordinances (Count 11).

The Court held a scheduling conference in this matter on October 31, 2017. Docket No. 55. The Defendants requested an opportunity to file initial motions for summary judgment on threshold, case-dispositive issues of law, including issues related to the statute of limitations,

before the Court set this case on a schedule.  The Court granted the Defendants' request and the Defendants subsequently filed the instant motions.

## LEGAL STANDARD

The Court renders summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue for trial exists, a court views all inferences drawn from the factual record in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  Once a party has made that showing, the non-moving party bears the burden of establishing otherwise.  *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323).  The non-moving party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.  Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.' "  *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

**DISCUSSION**

## I.        Statute of Limitations

Defendants argue that Cook's claims regarding his 1978 and 1994 convictions accrued more than 20 years ago and are thus barred by the two-year statute of limitations for a § 1983 action.  The parties do not dispute that the two-year statute of limitations governs Cook's claims. Docket No. 60 at 14; *see* Docket No. 69.  Rather, the parties dispute when Cook's § 1983 causes of action accrued and, therefore, when the two-year limitations period began.

Defendants argue that Cook's claims are barred for two primary reasons: (1) Cook's §1983 claims are false imprisonment or wrongful imprisonment claims that relate to conduct that occurred before each criminal trial and that this prior conduct cannot be extended to future convictions under *Wallace v. Kato*, 549 U.S. 384 (2007); and (2) Cook's 1978 and 1994 convictions were favorably terminated each time the convictions were reversed and remanded, and so, the statute of limitations for any claims relating to those convictions began to run immediately upon reversal and remand of each conviction.  Docket No. 60 at 14–16; *see also* Hr'g. Tr. 19:6– 10.  Cook responds that the statute of limitations has not begun to accrue on any of his claims and that accrual is deferred under the *Heck* bar until the Court of Criminal Appeals reverses his 1999 conviction and the indictment against him is dismissed.  Docket No. 69 at 10–11.

In *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), the Supreme Court held that:

> [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

In *Heck*, the plaintiff alleged that prosecutors and an investigator with the state police "engaged in 'unlawful, unreasonable, and arbitrary investigation' leading to [Heck's] arrest; 'knowingly destroyed' evidence which was exculpatory in nature . . . and caused 'an illegal and unlawful voice identification procedure' to be used at [Heck's] trial." *Heck*, 512 U.S. at 479. The Supreme Court determined that the common-law cause of action for malicious prosecution provided the closest analogy to the claims brought by Heck because, "unlike the related cause of action for false arrest or imprisonment, it permit[ted] damages for confinement imposed pursuant to legal process."[7] *Id*. at 484.

The Court affirmed the district court and appellate court's findings that Heck's civil suit was barred because his malicious prosecution claims challenged the legality of his conviction. *Id*. at 477. The Court reasoned that requiring termination of the prior criminal proceeding in favor of the accused as a condition for bringing a malicious prosecution suit "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution." The Court cautioned that permitting a convicted defendant to file a § 1983 civil suit "would permit a collateral attack on the conviction through the vehicle of a civil suit." *Id*. at 486.

In 2007, the Supreme Court further expounded on the exception to the deferred accrual rule under *Heck* for false arrest claims. *Wallace v. Kato*, 549 U.S. 384 (2007). In *Wallace*, the Court determined that Wallace's challenge of his unlawful arrest was most analogous to the common-law tort of false imprisonment. The Court held that the *Heck* bar did not apply in *Wallace* because "the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or

_____

[7] "42 U.S.C. § 1983 creates a species of tort liability." *Heck*, 512 U.S. at 483. "In defining the contours and prerequisites of a § 1983, including its rule of accrual, courts are to look first to the common law of torts." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017).

sentence that has *not* been . . . invalidated,' that is to say, an 'outstanding criminal judgment.' It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn." *Id.* at 393 (emphasis in original). The Court found that Wallace's claim began to accrue when he was taken before a magistrate and bound over for trial because at that point he became detained pursuant to legal process and his civil action would not impugn any anticipated future conviction. *Id.*

### A. Type of Claim

Defendants argue that all of Cook's claims arise out of being "wrongfully imprisoned" under the Fourth Amendment and that, therefore, under *Wallace*, Cook's claims began to accrue before his first trial in 1978. Docket No. 60 at 14–16. This is an oversimplification of Cook's claims. Though, at times, Cook does indeed allege in his complaint that he was "wrongfully arrested," Am. Compl. ¶¶ 1, and "falsely arrested," *id.* ¶ 82, all of Cook's claims, with the exception of his malicious prosecution claim, are due process claims brought under the Fifth and Fourteenth Amendment. Cook has not alleged an independent false imprisonment or false arrest claim. *See* Am. Compl. Rather, Cook claims that Defendants deliberately withheld exculpatory and impeachment evidence from Plaintiff and from prosecutors," *id.* ¶ 95, Defendants fabricated and solicited false evidence, *id.* ¶ 96, Defendants acted in conspiracy with each other to unreasonably seize Cook, frame him and perpetuate judicial proceedings against him despite knowing that Cook was innocent, *id.* ¶¶ 102, 129, Defendants failed to intervene to prevent the violation of Cook's constitutional rights, *id.* ¶ 136, and Defendants maliciously prosecuted Cook, *id.* ¶ 140.

But even if Cook did allege false arrest or imprisonment claims, Cook argues that these claims would arise out of Defendants' misconduct and malicious prosecution, *id.* ¶¶ 107, 111, and

so, are not Fourth Amendment false imprisonment claims. In a recent opinion, the Fifth Circuit further clarified the applicability of *Wallace* in this type of situation and distinguished that "[a] false-imprisonment claim is based upon 'detention without legal process', " which "begins to run at the time the claimant becomes detained pursuant to legal process;" whereas "a malicious prosecution claim is based upon 'detention accompanied . . . by *wrongful institution* of legal process'," and "does not accrue until the prosecution ends in the plaintiff's favor." *Winfrey v. Rogers*, ___F.3d.___, No. 16-20702, 2018 WL 3976939, at *5 (5th Cir. Aug. 20, 2018) (emphasis in original). In *Winfrey*, the Court found that because plaintiff was "arrested pursuant to an arrest warrant, issued through the normal legal process, that [was] alleged to contain numerous material omissions and misstatements," plaintiff's allegations were more of "a wrongful institution of legal process—an unlawful arrest pursuant to a warrant—instead of a detention with no legal process" claim. *Id*. at *6.

Though it is a nuanced distinction, Cook does not allege that he was wrongfully detained without legal process; rather, Cook claims he was arrested and imprisoned pursuant to an investigation conducted by the Defendants, but that the investigation itself was based on falsified inculpatory evidence and unlawfully concealed exculpatory evidence. In other words, Cook does not allege he was unlawfully arrested without a warrant or probable cause; he claims that the legal process resulting in his imprisonment was unlawfully instituted.

Cook's claims are more akin to those in *Heck*, where Heck complained of unlawful, unreasonable, and arbitrary investigation leading to his arrest, exculpatory evidence being knowingly destroyed by officers acting under the color of law, and illegal and unlawful voice identification procedure being used at his trial. *Heck*, 512 U.S. at 479. Other courts have followed that reasoning under similar factual circumstances. *See Brown v. City of Houston*, 297 F. Supp.

3d 748, 760 (finding that "Brown's § 1983 claims are most analogous to the malicious prosecution tort" where Brown alleged that defendant manipulated and concealed exculpatory evidence, actively harassed and intimidated multiple witnesses into providing false testimony, and initiated and continued criminal proceedings against him without probable cause); *Jordan v. Blount Cty.*, 885 F.3d 413, 414–15 (6th Cir. 2018) (finding that claim of prosecutorial misconduct that led to Jordan's wrongful conviction, specifically that prosecutors withheld exculpatory evidence in violation of *Brady*, was analogous to a malicious prosecution claim); *Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015) (finding that plaintiff's allegations that law officers submitted a false police report, planted a gun, and provided false testimony at plaintiff's criminal trial qualified as fabricating evidence, implicated plaintiff's Fourteenth Amendment due process rights, and triggered the *Heck* bar, though ultimately dismissing the claims on other grounds); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 390 (4th Cir. 2014) (finding that parties properly agreed that Owen's *Brady*-like claims of withholding exculpatory evidence were most analogous to the tort of malicious prosecution and that plaintiff timely filed his suit).

In their reply brief, Defendants contend that the Supreme Court in *Wallace* applied its rulings to all § 1983 claims, not just to claims of false arrest, when it stated that "[i]f a plaintiff files a false-arrest claim before he has been convicted (or files *any other claim* related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case or likelihood of a criminal case is ended." Docket No. 71 at 2 (quoting *Wallace*, 549 U.S. at 393–94) (emphasis added). Defendants argue that Cook's fabricated evidence claims fall within the parenthetical category of "any other claim," because the issue of admissibility of allegedly fabricated testimony would "relate to rulings

that will likely be made pending trial." *Id.* at 3; Tr. at 25:1–4. Defendants' reliance on this explanatory parenthetical is misplaced.

The Supreme Court in *Wallace* "expressly limited [its] grant of certiorari to [petitioner's] Fourth Amendment false-arrest claim." 549 U.S. at 387 n.1. Defendants have not directed this Court to any authority where a court has applied *Wallace* beyond the scope of a false arrest claim. Just the opposite is true. Since *Wallace*, courts have readily distinguished false arrest claims from other claims brought under § 1983, including malicious prosecution and withholding of evidence claims. *See, e.g., Winfrey v. Rogers*, 2018 WL 3976939, at *5–6 (distinguishing application of *Wallace* in false arrest claims from other claims brought under § 1983, including malicious prosecution and withholding of evidence claims); *Brown v. City of Houston*, 297 F. Supp. 3d 748, 759–61 (same); *Jordan v. Blount Cty.*, 885 F.3d 413, 414–15 (same); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 390 (same). Moreover, Cook's claims of fabrication or withholding of evidence go directly to the substantive validity of his conviction, which are precisely the types of claims barred under *Heck* to prevent collateral attack of a conviction through a civil suit.

Cook's claims are most analogous to the common-law tort of malicious prosecution. Therefore, Cook's claims are subject to deferred accrual under *Heck* and are subject to the two-year statute of limitations upon a favorable termination of the criminal proceedings.

## B. Favorable Termination

The Court next turns to the inquiry of what constitutes a favorable termination and whether Cook's criminal proceeding has been favorably terminated. Defendants argue that Cook's § 1983 claims as to each conviction began to accrue upon reversal of those convictions or his release. In other words, Defendants assert that: (1) Cook's claims regarding his 1978 conviction began to

accrue when his conviction was reversed and remanded for a new trial in 1991; (2) that his claims regarding his 1994 conviction began to accrue upon reversal in 1996; and (3) that his claims regarding his 1999 conviction began to accrue upon his release from prison later that year. Docket No. 60 at 16–17. According to Defendants, each time Cook's criminal conviction was reversed and remanded—even if Cook was still under indictment—the underlying conviction was favorably terminated such that the statute of limitations on any claims relating to that conviction began to run. Docket No. 60 at 10–13. Defendants primarily rely on three Fifth Circuit cases in making this argument.

Defendants cite to *Davis v. Zain*, 79 F.3d 18 (5th Cir. 1996), which they contend is "the key case for the Court to consider in this case." Tr. at 7:19–21; Docket No. 60 at 10–11. In *Davis*, the Texas Criminal Court of Appeals reversed Davis's 1990 conviction and remanded for a new trial because the district attorney engaged in prosecutorial misconduct and suborned perjury. *Davis*, 79 F.3d at 18. Davis then filed his § 1983 suit in federal district court, which the court dismissed on the basis that the criminal proceedings against Davis had not terminated in his favor —Davis was still awaiting his second trial—and, consequently, his claim had not accrued under *Heck*. *Id*. at 19. The Fifth Circuit reversed the district court, finding that "the question arising from Davis's criminal trial over which he is now suing—his alleged wrongful 1990 conviction in state court using tainted evidence—has been fully adjudicated in his favor: the conviction has been reversed." *Id*. Defendants argue that similar to *Davis*, Cook's § 1983 action based on the events prior to his first conviction accrued when that conviction was reversed, even if Cook was facing a retrial on the same charges. Docket No. 60 at 11.

Defendants, however, overlook the entire second half of the *Davis* opinion, in which the Fifth Circuit also found that "it is highly unlikely that Davis's § 1983 suit will implicate the validity

of his pending retrial for capital murder" because the state indicated that it did not intend to use any of the tainted evidence in retrying Davis. 79 F.3d at 19 ("Consequently, there is little likelihood here for conflict between Davis's § 1983 suit and the pending state court proceeding."). More importantly, the Fifth Circuit also noted that "if some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay or, perhaps, abstention." *Id.* at 19 (citing *Heck*, 512 U.S. at 487 n.8). *Davis* is readily distinguishable in a case like this where any success on Cook's § 1983 claims would necessarily impugn and call into question his criminal conviction.

The Fifth Circuit addressed this issue again in *Clay v. Allen*, 242 F.3d 679 (5th Cir. 2001), in which the court considered the question of "whether *Heck* applies when a state court reverses a criminal defendant's conviction but orders a retrial, subjecting the defendant to a potential conviction in the future." *Id.* at 681. The Fifth Circuit reiterated its holding in *Davis* that "a criminal defendant *may* initiate a § 1983 suit if the state court has merely reversed the conviction; it does not necessarily matter if the defendant faces a pending criminal charge on retrial." *Id.* (emphasis added). The court found, however, that *Heck* did not bar Clay's § 1983 suit because in reversing his conviction, the Mississippi Supreme Court had clearly ruled in Clay's favor on his claim that the trial court erred in setting an excessive bail and so, there could be no future conflict between Clay's § 1983 suit and any potential future conviction. *Clay*, 242 F.3d at 682 ("[E]ven if the district court ruled in the § 1983 suit that [defendants] had violated Clay's constitutional right— by tampering with trial records, handpicking the jury in the first trial, setting an excessive bail, etc.—it would not undermine any potential conviction in the retrial, because that conviction would not likely be based upon the alleged misconduct of [defendants]"). Like *Davis*, *Clay* is similarly inapposite to the case at hand because Cook alleges that he was convicted as a result of Defendants'

conduct in manufacturing evidence, withholding exculpatory evidence, and coercing witnesses to bear false testimony, all of which would have undermined any potential conviction in Cook's subsequent retrials.

*Davis* and *Clay* have little applicability here given the facts of this case. Cook's first conviction was reversed and remanded because the State's psychiatrist had interviewed and examined Cook, without first advising him of his constitutional rights and giving him an opportunity to consult with his attorney, and then later testified at trial about conclusions gained from that interview during the penalty phase of trial. *See Cook v. State*, 821 S.W.2d 600 (Tex. Crim. App. 1991). In reversing the first conviction, the Texas Criminal Court of Appeals never considered Cook's claims of fabrication of evidence, withholding of evidence, malicious prosecution, coercion of witnesses or conspiracy.

Moreover, while the Criminal Court of Appeals reversed and remanded Cook's third trial (his second conviction), observing that it was tainted from the outset by prosecutorial and police misconduct, it only barred the State from using Robert Hoehn's prior trial testimony in a subsequent retrial because Hoehn's testimony was tainted by the State's prior misconduct and could not be corrected by cross-examination or other means. *Cook v. State*, 940 S.W.2d 623 (Tex. Crim. App. 1996). There is no evidence in the record that the State agreed not to use any of the other alleged tainted evidence underlying Cook's § 1983 claims in a fourth retrial. And in fact, the parties do not dispute that when Judge Jones entered Cook's plea agreement prior to the start of his fourth trial, he took judicial notice of the entire 1994 trial record, except for Robert Hoehn's testimony. *See supra*, undisputed fact no. 12.

Defendants also rely on *Prince v. Curry*, 423 Fed. App'x. 447 (5th Cir. 2011), in which the Fifth Circuit upheld the defendants' motion to dismiss Prince's § 1983 claims, noting that Prince's

lawsuit "clear[ed] the hurdle of *Heck v. Humphrey* . . . because his four-year sentence was declared

invalid by the Texas Court of Criminal Appeals." *Prince*, 423 Fed. App'x. at 450 n.3. The opinion,

however, provides no information about when Prince's § 1983 claims began to accrue or whether

the suit could proceed because it did not implicate the validity of the conviction.

Cook relies on *Brandley v. Keeshan*, 64 F.3d 196 (5th Cir. 1995), *abrogated on other

grounds by Wallace v. Kato*, 549 U.S. 384 (2007), to argue that a favorable termination has not yet

occurred in his case, and will not occur, until his 1999 felony conviction is reversed and any

subsequent indictment against him is dismissed. Docket No. 69 at 10–11, 17. In *Brandley*, the

Fifth Circuit applied *Heck* to a situation where a plaintiff's conviction in a second trial (after his

first trial resulted in a hung jury) was reversed and remanded for a new trial on a finding that the

prosecution had suppressed evidence and improperly investigated the case. 64 F.3d at 198. Before

he had been retried, Brandley filed a § 1983 suit in district court. The Fifth Circuit held pursuant

to *Heck* that "[t]he underlying criminal proceeding must terminate in the plaintiff's favor before a

malicious prosecution claim accrues." *Id*. at 199. It then further elaborated that the burden of

establishing termination typically is met by "proving that the state court with jurisdiction has so

ruled," or by "an order of dismissal based on the running of the statute of limitations on the crime

or an order of dismissal reflecting an affirmative decision not to pursue." *Id*. "Even a prosecutor's

failure to act on remand will at some point entitle a defendant to an order of dismissal. However,

the reversal of a conviction and remand for a new trial is not, in and of itself, a termination." *Id*.

The State of Texas and Cook have jointly requested the Court of Criminal Appeals to

reverse Cook's 1999 felony conviction. The Court of Criminal Appeals has not yet ruled on the

request. Under *Brandley*, Cook's § 1983 claims will not begin to accrue until the Court of Criminal

Appeals vacates Cook's conviction and the State dismisses the charges. *See Brown v. City of*

*Houston*, 297 F. Supp. 3d 748, 762 (S.D. Tex. 2017) (relying on *Brandley* to find that Brown's conviction did not favorably terminate when his conviction was vacated, but rather that it favorably terminated when the State elected not to re-prosecute him and the trial court dismissed the charges); *Colomb v. Grayson*, No. 07-2171, 2011 WL 335673, at *4 (W.D. La. Jan. 31, 2011) (citing to *Brandley* to support a finding that Colomb's criminal prosecution was terminated in her favor when the charges against her were dismissed); *Rodarte v. Beneficial Texas. Inc.*, No. SA-16-CA-71-RP, 2016 WL 1312637, at *19 (W.D. Tex. Apr. 4, 2016) (citing to *Brandley* for favorable termination); *Hoog-Watson v. Guadalupe Cty., Tex.*, 591 F.3d 431, 434–35 (5th Cir. 2009) (same);[8] *see also Jordan v. Blount Cty.*, 885 F.3d 413, 414–15 (6th Cir. 2018) (finding that plaintiff's criminal proceeding continued even after his conviction was vacated and that it only favorably terminated upon his acquittal); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 390 (4th Cir. 2014) (finding that plaintiff's claims were favorably terminated only when a *nolle prosequi* was entered, and not merely when the state vacated the conviction and granted a new trial).

Consistent with *Heck* and Fifth Circuit law, Cook's conviction has not been favorably terminated yet and his § 1983 claims will not begin to accrue until the Court of Criminal Appeals vacates the conviction and the State dismisses the indictment. Defendants' motions for summary judgment (Docket Nos. 60 and 63) on the basis of the statute of limitations are **DENIED.**

---

[8] Defendants contend that *Brandley* has no precedential value after *Wallace*. Docket No. 71 at 5–6. The Fifth Circuit has stated that "[t]o the extent *Wallace* conflicts with our decision *Brandley*" as to when a false arrest action accrues, "*Wallace* abrogates *Brandley*." *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008). But *Wallace* did not abrogate *Brandley* on the issue of favorable termination, and the Fifth Circuit and district courts have continued to rely on *Brandley* in determining what actions constitute favorable termination, even after *Wallace*.

## II.       The 1999 Conviction

Defendants offer a number of additional arguments for why Cook's claims relating to his 1999 conviction are without merit.   Docket No. 60 at 17–25.   None of these arguments passes muster for granting summary judgment as a matter of law.

Defendants argue that Cook is estopped from challenging his 1999 conviction because he entered a *nolo contendre* plea and accepted the benefits of the plea agreement "by remaining free for the last eighteen years."  Docket No. 60 at 19.  Defendants rely on *Rhodes v. State*, 240 S. W.3d 882, 891 (Tex. Crim. App. 2017), in which the plaintiff who had accepted a more lenient punishment as a result of a technical mistake in the prior judgment was estopped from later challenging the validity of that same judgment.  But the Court of Criminal Appeals clarified in a subsequent case that *Rhodes* cannot be used to estop a defendant from collaterally attacking a conviction that resulted from a plea agreement.  *Ex Parte Shay*, 507 S.W.3d 731, 734 (Tex. Crim. App. 2016).  Regardless, Cook's plea agreement resulted in a *conviction*, and Defendants do not cite to any authority that would suggest that a conviction resulting from a *nolo contendre* plea agreement is treated differently from a conviction obtained through other means for the purpose of bringing a § 1983 case.  *See* Docket Nos. 60 at 17–19; 71 at 8.

Defendants also contend that Cook cannot establish that any act or omission of Defendants proximately caused his 1999 conviction because Judge Jones's acceptance of Cook's plea agreement constituted a supervening act or an "independent intermediary," relieving the Defendants of any liability for the 1999 conviction.   Docket No. 60 at 20.  The independent intermediary doctrine shields an officer from being liable for an unlawful arrest "if the facts supporting a warrant or indictment are put before an intermediary such as a magistrate or a grand jury." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988).  However, Defendants' argument goes

well beyond the scope intended by the independent intermediary doctrine. *See Murray v. Earle*, 405 F.3d 278 (5th Cir. 2005) (emphasizing "our analysis does not apply to Fourteenth Amendment claims that attack the lawfulness of the interrogation itself."). Defendants do not cite to any authority that would suggest this doctrine may be extended to a § 1983 suit that is based on substantive due process violations and claims of malicious prosecution. Likewise, Defendants have not shown, as a matter of law, that the 1999 conviction broke a causal link for damages. Nor have Defendants met their summary judgment burden to demonstrate that Cook's plea agreement relieves Defendants who were not personally involved in the plea agreement from any liability, or that the stipulation of evidence entered in connection with the plea agreement was an independent basis for conviction. Docket No. 60 at 21–22. Defendants' arguments that Cook's plea agreement precludes Cook from asserting his § 1983 claims are conclusory and wholly unsupported by law.

Defendants further claim that Cook may only challenge the 1999 conviction for Defendants' pre-1994 investigations, acts or omissions because the evidence used to convict Cook in 1999 was only from two sources: (1) a stipulation of evidence signed by Cook, and (2) the 1994 trial record. Docket No. 60 at 22. Defendants do not cite to a single case to support this proposition, and have not met their burden to establish, as a matter of law, that Cook is limited to challenging his 1999 conviction based only on pre-1994 acts.

Defendants' motions for summary judgment (Docket Nos. 60 and 63) on these grounds are **DENIED**.

## III. Absolute Immunity

Defendants next claim that absolute immunity bars all of Cook's claims relating to the testimony of witnesses and the alleged acts or omissions of Defendants relating to such testimony. Docket No. 60 at 25–26. Defendants argue that under *Rehberg v. Paulk*, 566 U.S. 356, 370 (2012),

any "preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony," grants that witness absolute immunity from any § 1983 claim based on their testimony. Docket No. 60 at 25. Smith County Defendants claim that Robert Wickham, in particular, is protected by absolute immunity because his only involvement in this matter was his 1992 and 1994 trial testimony. Docket No. 63 at 2–4.

Wickham was a reserve deputy with the Smith County Sheriff's Office from 1976 to 1983. Docket No. 63-1, Robert Wickham Aff. (prepared December 14, 2017). According to Wickham, during the jury selection for Cook's first trial in 1978, he received a phone call from Sheriff J.B. Smith requesting that he come to the courthouse to assist in escorting Cook to the courtroom. *Id.* Wickham rode alone in the elevator with Cook from the basement of the courthouse up to the courtroom for jury selection. *Id.* Wickham attests that during the elevator ride, Cook asked Wickham if he thought Cook had "killed that girl," to which Wickham replied he did not know and that it was for the jury to decide. *Id.* Wickham attests that, in response, Cook "stated that he had killed her and that he did not give a shit what they did to him." *Id.* Wickham attests that he had no subsequent conversations with Cook. *Id.* Wickham argues that because his only role in this case was his trial testimony on Cook's confession in the elevator, he is entitled to absolute immunity, regardless of any claim by Cook that this testimony was negligent, reckless or untruthful. Docket No. 63 at 3–4.

It is well-established that "a trial witness has absolute immunity with respect to any claim based on the witness' testimony." *Rehberg*, 566 U.S. at 367 (citing *Briscoe v. LaHue*, 460 U.S. 325, 323–33 (1983)). "Witnesses, including police officers, are also shielded by absolute immunity from liability for their allegedly perjurious testimony." *Enlow v. Tishomingo Cty., Miss.*, 962 F.2d 501, 511 (5th Cir. 1992) (citing *Briscoe*).

The parties do not appear to dispute that Wickham is entitled to absolute immunity for the testimony he gave at trial. Docket No. 69 at 25; *see also* Am. Compl. ¶ 75. Cook argues, however, that he has "alleged misconduct beyond Wickham's trial testimony. Namely, that in 1991 prior to trial, Wickham fabricated the claim that Plaintiff confessed to him back in 1978 and reduced this fabricated evidence to an affidavit." *Id.*; *see* Docket No. 69-4 at 2–3, Robert Wickham Aff. (prepared September 26, 1991). Plaintiff argues that Wickham's fabrication is similar to "investigation-type" misconduct, like falsifying a police report, which the Fifth Circuit has found is not protected by testimonial immunity. Docket No. 69 at 31 (citing *Castellano v. Faragozo*, 352 F.3d 939, 958 & n.107 (5th Cir. 2003)).

While courts have indeed held that non-testimonial pretrial actions, such as the fabrication of evidence, are not within the scope of absolute immunity because they are not part of the trial, *Castellano v. Faragozo*, 352 F.3d at 958, Wickham's affidavit was created in 1991 ahead of, and in preparation of, Cook's 1992 retrial. Based on Cook's allegations and the evidence in the record, Wickham's trial testimony was cabined to the contents of the affidavit. The mere fact that Wickham reduced his oral testimony into an affidavit does not defeat the absolute immunity afforded to witnesses who testify at trial, even if that testimony is alleged to be perjurious. *See Enlow*, 962 F.2d at 511; *see also Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) (dismissing all claims that were dependent on the officer's alleged perjurious grand jury testimony on the basis of absolute immunity but allowing claims unrelated to the officer's grand jury testimony to go forward.).

For summary judgment purposes, the Fifth Circuit has consistently held that the defendant who pleads the affirmative defense of absolute immunity bears the burden of proving that the conduct at issue is protected. *Cole v. Carson*, 802 F.3d 752, 777 (5th Cir. 2015), *vacated sub nom.*

*on other grounds*, *Hunter v. Cole*, 137 S.Ct. 497 (2016) (citing *Hoog-Watson v. Guadalupe Cty.,*
*Tex.*, 591 F.3d 431, 437 n.6 (5th Cir. 2009) (finding that the district court correctly placed the
burden of proving absolute immunity at summary judgment with the prosecutor to show she was
performing a prosecutorial function)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)
("*Butz* also identifies the location of the burden of proof. The burden of justifying absolute
immunity rests on the official asserting the claim.").

Defendant Wickham is entitled to absolute immunity with respect to his trial testimony in
Cook's 1992 and 1994 retrials and has established that this immunity extends to the affidavit he
prepared in 1991 wherein he related the substance of his intended testimony. Accordingly, Smith
County Defendants' motion for summary judgment (Docket No. 63) is **GRANTED-IN-PART**
with respect to Defendant Robert Wickham.

To the extent the remaining Defendants seek absolute immunity, Plaintiff agrees "[t]here
is no dispute that Defendants would be absolutely immune for their trial testimony, preparation for
that testimony, and any conspiracy to falsely testify." Docket No. 69 at 29. However, Defendants
have not met their summary judgment burden of proving that the misconduct Cook alleges falls
into those protected categories. Accordingly, the motions for summary judgment for absolute
immunity with respect to all other remaining Defendants (Docket Nos. 60 and 63) are **DENIED**.

## IV.    Destruction of Evidence

Defendants also argue that Cook's claims that Defendants "destroyed evidence that
Plaintiff could have used to further prove his innocence" are barred by the two-year statute of
limitations. Docket No. 60 at 26. Specifically, Defendants argue that any claims relating to the
loss or destruction of DNA evidence in 2001 are barred because Cook knew of these claims by
2012. *Id.*

Whether Cook knew in 2012 that crime scene evidence was lost or destroyed in 2001 is immaterial to whether Cook may now bring a § 1983 destruction of evidence claim. For the reasons discussed above, *see supra* Section I, Cook's allegations that Defendants withheld exculpatory DNA evidence or fabricated or destroyed any evidence would necessarily imply and attack the validity of his underlying conviction, and thus, Cook would have been barred from bringing a § 1983 suit on the matter before his conviction is favorably terminated.

Accordingly, Defendants' motions (Docket No. 60 and 63) on this ground are **DENIED**.

## V.     Immunity with Respect to State Law claims

Lastly, Defendants argue that governmental immunity bars all state-law tort claims against Defendants. Docket No. 60 at 27. Cook acknowledges that "Defendants are entitled to assert absolute immunity to state claims." Docket No. 69 at 35. Accordingly, Defendants' motions for summary judgment (Docket Nos. 60 and 63) are **GRANTED** on the basis of governmental immunity from state-law tort claims.

## CONCLUSION

In accordance with the above, the Court **GRANTS-IN-PART** Defendants' motions for summary judgment (Docket Nos. 60 and 63) on the basis of governmental immunity from state-law tort claims as to all Defendants and on the basis of absolute immunity as to Defendant Robert Wickham.

Defendants' motions are **DENIED-IN-PART** on all other grounds. Cook's claims are not barred by the statute of limitations; they have not begun to accrue. Furthermore, Defendants have not shown that Cook's claims relating to his 1999 conviction or his claims relating to destruction of evidence are barred as a matter-of-law. Moreover, with the exception of Defendant Robert

Wickham, the remaining Defendants have not shown that their alleged misconduct falls into any of the protected categories for absolute immunity.

Plaintiff acknowledges that all of his federal claims are premature pending dismissal of the indictment. Docket No. 69 at 6, 22. In light of the Court's rulings contained herein, the parties are **ORDERED** to meet and confer and file a joint status report within **twenty (20) days** from the date of this order as to how the parties believe the case should proceed.

The parties' pending motions regarding proposed docket control orders (Docket Nos. 48 and 49) are **DENIED-AS-MOOT**, and the Court will instruct the parties to re-submit a proposed docket control order at a later time.

**So ORDERED and SIGNED this 18th day of September, 2018.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE