## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| KERRY MAX COOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:17-cv-333-JDK |
| | § | |
| CITY OF TYLER, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kerry Max Cook alleges that he was wrongfully arrested, charged, prosecuted, and convicted for the 1977 rape and murder of Linda Jo Edwards.

In 2024, the Court of Criminal Appeals of Texas determined that Cook was actually innocent and set aside his conviction. In a 106-page opinion, the Texas court chronicled the myriad ways actors for the State lied, hid exculpatory evidence, suborned perjury, intentionally deceived the courts, and then did nothing "to halt Cook's then-pending execution." *Ex parte Cook*, 691 S.W.3d 532, 588 (Tex. Crim. App. 2024). The court concluded that "[p]rosecutorial and police misconduct has tainted this entire matter from the outset" and that "Cook has been the victim of numerous Brady violations, secret deals, prosecutorial blunders, and perjured testimony," among other abuses. *Id.* at 589 (quoting *Cook v. State*, 940 S.W.2d 623, 627 (Tex. Crim. App. 1996)); *id.* at 590. The court described Cook's case as "one of the most notable murder cases in the last half-century," marked "by bookends of deception spanning over 40 years." *Id.* at 535.

1

Here, Cook brings several civil rights claims under 42 U.S.C. § 1983 against the City of Tyler, Smith County, former Smith County Sheriff J.B. Smith, former polygraph examiner Marvin McLeroy, and individual Tyler police officers Eddie Clark, Eric Liptak, Robert Bond, Gerald Hayden, Nelson Downing, Kenneth Findley, Fred Mayo, and Ronald Scott.[1]  Cook alleges that Defendants knowingly and unlawfully set out to frame him for Edwards's murder while "actively and systematically disregard[ing], downplay[ing], and conceal[ing] obvious evidence pointing to the victim's married, 44-year-old disgruntled ex-lover, James Mayfield." Docket No. 122 ¶ 4.

Defendants now move to dismiss the complaint.  Docket Nos. 135; 138; 143; 146; 167.  The Court held oral argument on the motions on May 21, 2025.  Docket No. 168.

As the Court explains below, Defendants' motions to dismiss are **GRANTED-in-part** and **DENIED-in-part**.  Specifically, the Court **GRANTS** the motions to dismiss J.B. Smith, Robert Bond, Kenneth Findley, Nelson Downing, Ronald Scott, and Fred Mayo because the complaint fails to identify any action taken by these particular Defendants against Cook.  The Court also **GRANTS** the motions to dismiss Count III, substantive due process; Count VI, failure to intervene; and Count VII, municipal liability as to Smith County only.

All other motions are **DENIED**.

---

[1]  Cook also sued police officers Douglas Collard, Ronnie Malloch, Stuart Dowell, Jake Massey, and Gene Carlson, but these parties were never served and have not appeared.

# I.

In 1977, Linda Jo Edwards was raped and murdered in an apartment in Tyler, Texas. From the outset, Cook alleges, Defendants ignored—and later, destroyed—ample evidence that Edwards's former boyfriend James Mayfield committed the crime. Docket No. 122 ¶ 4.[2] Instead of "following the evidence," Defendants "created a sham psychological profile of the killer as a homosexual man," and "believing [Cook] was gay," Defendants "made him their target." *Id.* ¶ 6. Defendants then "fabricated evidence to make their case," "manufactured a false fingerprint analysis, coerced false statements and testimony from witnesses—including jailhouse informants—[] created knowingly and recklessly false investigative materials," and "concealed crucial exculpatory evidence." *Id.* ¶ 7.

Defendants pursued Cook to trial where, in 1978, he was convicted and sentenced to death. *Id.* ¶ 161. Cook then spent more than two decades on death row until he was released in 1999 because of a negotiated plea agreement with the State. On June 19, 2024, as mentioned above, the Court of Criminal Appeals determined that state actors had repeatedly violated Cook's constitutional rights, found that Cook had met the high burden of "actual innocence," and set aside his conviction. *Ex Parte Cook*, 691 S.W.3d at 590.

Cook filed this lawsuit, asserting six causes of action under § 1983 against the individual Defendants: violation of due process (Count I), illegal detention/malicious

---

[2] At this stage in the proceeding, the Court accepts as true Cook's well-pleaded allegations. *See, e.g., Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986); *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013).

prosecution (Count II), violation of substantive due process (Count III), destruction of evidence (Count IV), conspiracy to deprive constitutional rights (Count V), and failure to intervene (Count VI).  Cook also brings a municipal liability claim against Smith County and the City of Tyler (Count VII).  And finally, Cook brings a state law claim of indemnification against the City of Tyler (Count VIII).

The individual Defendants move to dismiss based on qualified immunity and other non-QI grounds.  Both the City and County argue that the complaint fails to properly state a claim of municipal liability.

## II.

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint that fails to state a claim.  FED. R. CIV. P. 12(b)(6).  Such motions are "viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove

4

consistent with the allegations in the complaint." *Muhammad v. Dall. Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007); *see also Twombly*, 550 U.S. at 563 (noting that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III.

The individual Defendants argue primarily that they should be dismissed from the case because they are entitled to qualified immunity. Alternatively, they argue that the complaint fails for other non-QI reasons.

The Court addresses each argument in turn.

### A.

First, qualified immunity. *See Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) ("[W]here the pleadings are insufficient to overcome QI, the district court *must* grant the motion to dismiss.") (emphasis in original).

### 1.

Under 42 U.S.C. § 1983, any person who, acting under color of law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and the laws . . . shall be liable to the party injured in an action at law." *See also Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).

A state official sued under § 1983 may assert the defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity provides

government officials immunity from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brothers v. Zoss*, 837 F.3d 513, 517 (5th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity is a powerful defense, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A defendant may raise the defense early in the case in a motion to dismiss. *Carswell*, 54 F.4th at 311. In ruling on such a motion, a court must determine whether the plaintiff "has pleaded 'facts which, if true, would overcome the defense of qualified immunity.'" *Id.* (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)). In other words, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

To overcome qualified immunity at the pleading stage, a plaintiff must make two showings. First, the plaintiff must allege that the defendant "violated the plaintiff's constitutional rights." *Brothers*, 837 F.3d at 517 (quoting *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016)). And second, the plaintiff must demonstrate that "the right was clearly established" at the time of the alleged misconduct. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017). "In order for a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting

6

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Although this does not mean that 'a case directly on point' is required, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013)). The Court may examine either requirement first, and both are matters of law for the Court to decide. *Brothers*, 837 F.3d at 517 (citing *Pearson*, 555 U.S. at 227).

"[A]n assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard," so analysis under Rule 8 is sufficient. *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020); *see also* FED. R. CIV. P. 8(a)(2). And the Court must "do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)).

### 2.

Each of the individual Defendants argues that he's entitled to qualified immunity because the complaint fails to specify his own personal involvement in the alleged misconduct. As explained below, the Court agrees that the claims against J.B. Smith, Robert Bond, Kenneth Findley, Nelson Downing, Ronald Scott, and Fred

Mayo must be dismissed for this reason.  The allegations against the remaining individual Defendants—Eddie Clark, Eric Liptak, Gerald Hayden, and Marvin McLeroy—however, sufficiently state their personal involvement in the various violations against Cook.

"[A] § 1983 plaintiff 'must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Armstrong v. Ashley*, 60 F.4th 262, 274–75 (5th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 676).  A plaintiff may not "group plead"—that is, he may not allege that the defendants acted improperly "as a group without factual material suggesting that any particular defendant" acted improperly.  *Id.* at 275; *see also, e.g.*, *Dyer v. Houston*, 964 F.3d 374, 382 n.6 (5th Cir. 2020) ("We recognize the settled rule that, in assessing qualified immunity, a court must 'consider the conduct of each officer independently,' not 'collectively.'" (citations omitted)); *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (explaining that the court has always reviewed qualified immunity for each individual defendant and stating that the district court erred by evaluating officers together); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("[W]e do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the [illegal conduct] is specifically pled.").  Thus, in *Armstrong*, the Fifth Circuit affirmed the dismissal of claims against eight law enforcement defendants because the complaint "suffer[ed] from the distinct problem of group pleading"—lumping the eight defendants together

as a group without allegations that any particular officer acted unlawfully.  60 F.4th at 274–75.

The complaint here suffers from the same problem—at least with respect to Smith, Bond, Findley, Downing, Scott, and Mayo.  The complaint identifies J.B. Smith as the "then-Sheriff of Smith County" and states that Smith was "involved in supervising the Edwards murder investigation."  Docket No. 122 ¶¶ 25–26.  That's it. There are no allegations that Smith himself took any action to violate Cook's constitutional rights.  Similarly, there are no specific allegations against Bond, Findley, Downing, Scott, or Mayo.  The complaint states that these individuals are "current and former officers of the City of Tyler Police Department involved in supervising and conducting the Edwards murder investigation." *Id.* ¶ 20.  But it lacks any allegations that these particular individuals did something unlawful.  Rather, the complaint lists these officers, along with J.B. Smith and others, in a group it defines as the "Police Defendants." *Id.* ¶ 28.  The complaint then proceeds to describe various acts taken by the "Police Defendants" as a group.  *See, e.g.*, *id.* ¶¶ 28; 68–72. That is insufficient, and for this reason alone, the Court concludes that Smith, Bond, Findley, Downing, Scott, and Mayo are entitled to qualified immunity and are dismissed.

The same is not true, however, for Defendants Eddie Clark, Eric Liptak, Gerald Hayden, and Marvin McLeroy.  Regarding Clark, the complaint alleges several specific instances supporting Cook's claims, including that Clark personally excluded exculpatory information from an interview report that a witness had seen potential

suspect James Mayfield "at the crime scene."  Docket No. 122 ¶¶ 90–91 (alleging that Clark "left out James Mayfield's name and every aspect of [the witness's] description of the person she saw in Edwards's room that matched James Mayfield").  The complaint also alleges that Clark falsely "swore out an affidavit to arrest and charge [Cook] with Edwards' rape and murder," which "included the knowingly false, fabricated claim" that Cook's "fingerprints were left [at the crime scene] at the time of the murder."  *Id*. ¶ 159.  This is sufficient to overcome the "group pleading" problem with respect to Clark.  *Cf. Armstrong*, 60 F.4th at 274–75.

Similarly, the allegations against Liptak, Hayden, and McLeroy identify specific actions taken by each Defendant against Cook.  For example, the complaint alleges that Liptak worked with another individual to "create false documents claiming that, years earlier, [Cook] confessed to Edwards' murder" and "communicated this false information to the prosecutor's office before trial."  Docket No. 122 ¶ 133.  "[T]he fabricated confession was one of the bases upon which the prosecutor pursued the false case against [Cook]."  *Id.* ¶ 134.  Hayden allegedly concealed a police report in which he described an alternative suspect as "mentally and emotionally unstable, very hyper, and a pathological liar."  *Id*. ¶¶ 83, 87.  And McLeroy administered a polygraph examination on another potential suspect and then "deliberately concealed" the results of the examination, which "showed that [the suspect] lied when he denied knowing who killed Linda Jo Edwards."  *Id*. ¶¶ 103–104; *see also id*. ¶¶ 124–125 (alleging that McLeroy "administered multiple polygraph examinations" of a "jailhouse snitch" testifying against Cook, "which revealed that

[the snitch] was being deceptive about the supposed confession" and "concealed the results of the polygraph tests").

Accordingly, Clark, Liptak, Hayden, and McLeroy are not entitled to qualified immunity based on a group pleading theory.

### 3.

Clark, Liptak, Hayden, and McLeroy also argue that they are entitled to qualified immunity because the complaint fails to allege that they violated a clearly established constitutional right.  The Court disagrees.

**a.  Eddie Clark.**  As noted above, the complaint alleges that Clark intentionally excluded certain key information about an alternative suspect from a police report and falsified an affidavit to arrest and charge Cook with Edwards's rape and murder.  *See* Docket No. 122 ¶¶ 90–93; 158–59.  In particular, Cook alleges that Clark interviewed Edwards's roommate Paula Rudolph after the murder, that Rudolph described seeing Edwards's former boyfriend James Mayfield at the crime scene, that Clark left this information out of his interview report because Defendants "had committed to pinning the murder on a gay man," and that Defendants withheld Rudolph's statement about Mayfield from Cook and did not make it "available to [him] at trial."  *Id.* ¶¶ 90–93.  Cook alleges that this misconduct violated his right to due process.

Clark's motion to dismiss this claim is not a model of clarity.  He states that a "fabrication of evidence claim" "may not have been recognized at the time of Plaintiff's

11

trials." Docket No. 146 at 21.[3]  To the extent Clark is arguing that his alleged misconduct did not violate a clearly established constitutional right in 1977, the Court disagrees.  As the Fifth Circuit explained in *Brown v. Miller*, "the right of criminal defendants to be free from false or fabricated evidence was well settled by 1959 or earlier."  519 F.3d 231, 237 (5th Cir. 2008) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  In fact, "'if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence.'"  *Id.* (quoting *Limone v. Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004)).  Similarly, the suppression of exculpatory evidence "was a constitutional violation in this circuit" by at least 1967.  *See id.* (citing *Luna v. Beto*, 391 F.2d 329, 332 (5th Cir. 1967)); *see also* Docket No. 76 (denying J.B. Smith's motion to dismiss the original complaint based on qualified immunity because the fabrication of evidence constituted a knowing violation of the law in 1977).  Accordingly, the court in *Brown* held that a lab technician who created a "misleading and scientifically inaccurate serology report" and suppressed exculpatory blood test results violated the criminal defendant's clearly established due process rights in 1984.  *See Brown*, 519 F.3d at 237–38.

Clark cites *Morgan v. Chapman*, a 2020 decision in which the Fifth Circuit stated that it had only "recently" announced a due process right not to have police

---

[3] To add to the confusion, Defendants treat the "fabrication of evidence" claim and the "malicious prosecution" claim as one and the same, and they argue that the constitutional right supporting the claim was not clearly established in 1977.  *See* Docket No. 146 at 21–22.  As explained herein, the due process right to be free from false or fabricated evidence at trial *was* clearly established by then.  The Court thus rejects Defendants' qualified immunity argument for this reason.  Because the parties do not address whether the right to be free of malicious prosecution was clearly established in 1977, the Court does not reach that question.

deliberately fabricate evidence and use it to bring false charges against a person. 969 F.3d 238 (5th Cir. 2020) (citing *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015), *judgment vacated sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), and *opinion reinstated in relevant part*, 905 F.3d 334 (5th Cir. 2018)). But *Morgan* was addressing the fabrication of evidence in a different context—one in which a defendant is falsely charged but not tried and convicted. *See id.* at 242–43; *see Cole*, 802 F.3d at 770–71. And here, Cook alleges that Clark's fabrication and withholding of evidence resulted in his wrongful conviction, death sentence, and twenty years on death row.

Clark also argues that, to the extent Cook is bringing a claim under *Franks v. Delaware*, 438 U.S. 154 (1978), based on Clark's allegedly false affidavit, a "so-called *Franks* claim is not clearly established." Docket No. 146 at 20. The Court does not interpret Cook's complaint to assert a *Franks* claim against Clark on this basis.[4] Rather, the complaint alleges that, when preparing the affidavit to arrest Cook, Clark continued to omit the exculpatory information about James Mayfield's presence at the crime scene and further included additional "knowingly false, fabricated" evidence. *See* Docket No. 122 ¶¶ 158–60. This misconduct, Cook alleges, ultimately contributed to his wrongful conviction and sentence. *See id.* ¶ 161.

**b. Eric Liptak.** The allegations against Liptak are similar. Cook alleges that Liptak "create[ed] false documents" claiming that Cook had confessed to murdering Edwards in a courthouse elevator to Robert Wickham, "a friend of

---

[4] The Court notes that, in discussing the "*Franks* claim," Defendants do not identify any particular Count they seek to dismiss. Rather, the point appears to be an additional reason Defendants believe a fabrication of evidence claim was not clearly established.

13

Defendant Sheriff J.B. Smith." Docket No. 122 ¶ 133.  Liptak then shared this alleged confession with the prosecutor, and "the fabricated confession was one of the bases upon which the prosecutor pursued the false case against [Cook]."  *Id.* ¶¶ 133–34. Liptak makes the same argument raised by Clark discussed above—that a "fabrication of evidence claim" was not "recognized" in 1977.  Docket No. 146 at 21. But, for the same reasons Clark's argument fails, so too does Liptak's.  *See Brown*, 519 F.3d at 237 ("the right of criminal defendants to be free from false or fabricated evidence was well settled by 1959 or earlier").

**c. Gerald Hayden.**  Hayden allegedly concealed information about the adult daughter of potential suspect James Mayfield.  According to Cook, the daughter had "threatened to kill Edwards because of [Edwards's] affair with [her] father" just days before the murder.  Docket No. 122 ¶ 82.  Hayden allegedly wrote in a police report that the daughter was "mentally and emotionally unstable, very hyper, and a pathological liar."  *Id.* ¶ 83.  Then, Cook claims, Hayden concealed his report.  *Id.* ¶ 87.  Hayden argues that these allegations do not establish he "committ[ed] an act that violated a constitutional right."  Docket No. 146 at 17.  But, as explained above, "a public official's concealment of exculpatory evidence was a constitutional violation in this circuit" by 1967.  *Brown*, 519 F.3d at 238.

**d. Marvin McLeroy.**  Cook alleges that McLeroy is a former officer of the Texas Department of Public Safety who "conducted polygraph examinations as part of the police investigation into the Edwards murder."  Docket No. 122 ¶ 23.  McLeroy allegedly administered a polygraph examination of Greg Smith, an individual who

had interacted with Edwards the night of her murder. *Id.* ¶ 99–102. The examination "showed that Smith lied when he denied knowing who killed Linda Jo Edwards," and McLeroy "deliberately concealed this evidence from prosecutors, Plaintiff, and his criminal defense attorneys." *Id.* ¶ 103–04. McLeroy also administered "multiple polygraph examinations" of "jailhouse snitch Edward 'Shyster' Jackson," who had "completely fabricated [the] claim that Plaintiff confessed to him and made other inculpatory statements." *Id.* ¶ 122. The polygraphs "revealed that Jackson was being deceptive about the supposed confession," and in fact, "Jackson then admitted to McLeroy he was lying." *Id.* ¶ 124. Nevertheless, Cook alleges, McLeroy "deliberately concealed the results of the polygraph tests . . . and concealed Jackson's statements admitting he was lying." *Id.* ¶ 125. Because of the facts surrounding Greg Smith and Edwards, Cook argues that McLeroy "helped bury the existence of an alternate suspect by fabricating that [Greg] Smith was cleared as a suspect." Docket No. 140 at 6; *see also* Docket No. 122 ¶ 105.

McLeroy argues that his alleged misconduct was merely a "pre-indictment investigatory misadventure" and did no harm. Docket No. 138 at 5. But Cook contends that the false confession to Jackson was used to "bolster" the case against him—the case that resulted in his conviction, death sentence, and twenty years on death row. Docket No. 140 at 10. In fact, as McLeroy admits, Jackson testified falsely in Cook's first trial that Cook confessed to him, Docket No. 138 at 6, so evidence that Jackson previously told McLeroy he was lying about the confession would have been powerful impeachment evidence against Jackson. McLeroy also argues that

15

concealing polygraph results did not violate clearly established law in 1977. Docket No. 138 at 7. But McLeroy did not conceal only polygraph results; he also concealed the statement by Jackson "admitting he was lying" about Cook's confession. Docket No. 122 ¶ 124. And, as noted above, it was clearly established that law enforcement's "deliberate concealment of exculpatory evidence violates [the] right [to a fair trial], and can give rise to liability under § 1983." *Brown*, 519 F.3d at 238.

*     *     *

In sum, the Court finds that J.B. Smith, Robert Bond, Kenneth Findley, Nelson Downing, Ronald Scott, and Fred Mayo are entitled to qualified immunity and are dismissed from the case. The dismissal of these Defendants will necessarily result in the dismissal of Count VI, which is styled as a "failure to intervene" claim. Because there are no allegations that the remaining Defendants failed to intervene to prevent another person from violating Cook's constitutional rights, Count VI is hereby dismissed.

The Court concludes, however, that the complaint adequately alleges that Defendants Eddie Clark, Eric Liptak, Gerald Hayden, and Marvin McLeroy violated a clearly established constitutional right and are thus not entitled to qualified immunity at this stage in the proceeding.

## B.

The individual Defendants alternatively seek to dismiss the claims against them for various non-qualified-immunity reasons.

16

## 1.

First, Defendants argue that Count I, violation of due process; Count II, illegal detention/malicious prosecution; and Count IV, destruction of evidence, should be dismissed under the independent intermediary doctrine.  Docket No. 146 at 11–13.

Under the independent intermediary doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation" thereby "insulating the initiating party." *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)).  However, the doctrine applies only where a decision-maker is made aware of, and weighs, *all* the facts to make an independent determination.  *See Hand v. Gary*, 838 F.2d 1420, 1427–28 (5th Cir. 1988) (emphasis added).

Here, Cook has alleged that Defendants falsified or fabricated evidence, withheld exculpatory evidence, and concealed the truth from prosecutors, Cook and his counsel, the jury, and the courts.  *See, e.g.*, Docket No. 122 ¶¶ 122–29, 132–34.  In fact, the gist of the complaint is that Defendants actively *prevented* independent decision making.  As the Fifth Circuit has held, the chain of causation "is broken only where *all the facts* are presented" to the decision maker.  *Winfrey v. Rogers*, 901 F.3d 483, 496–97 (5th Cir. 2018) (emphasis added).  Because that did not happen here (as alleged by Cook), the independent intermediary doctrine does not apply.

**2.**

Defendants next argue that Count III, substantive due process, should be dismissed because Cook's "alleged harm is covered by other constitutional provisions." Docket No. 146 at 22. Defendants also suggest that there is no substantive due process right to be free of fabricated evidence that taints a criminal trial and results in a guilty verdict.

As an initial matter, the Court notes that Defendants do not appear to argue they are entitled to qualified immunity for this claim. Thus, neither side addresses whether this right under the "substantive due process clause" was clearly established in 1977. Nevertheless, the Court agrees that the claim must be dismissed. As Defendants observe, the Fifth Circuit has recognized a substantive due process violation where "police intentionally fabricate evidence and successfully get someone falsely charged with a felony." *Cole*, 802 F.3d at 772–73. But the court expressly stated that such a claim is available only where all other constitutional claims are "unavailing." *Id.* at 773. And here, Cook has asserted a procedural due process claim in Count I based on the same misconduct. Further, as noted above, *Cole* is also distinguishable because it addressed a right to be free of fabricated evidence even where the person was not ultimately tried and convicted. *See id.* at 771.

In response, Cook does not cite any authority to the contrary. Rather, he cites *Tyson v. Sabine*, 42 F.4th 508 (5th Cir. 2022), and other cases recognizing a substantive due process right "to be free of state-occasioned damage to a person's bodily integrity." *Tyson*, 42 F.4th at 517. Cook argues that these cases recognize a

18

general due process right to be free of any "arbitrary action of government under the 'shocks the conscience' standard.'" Docket No. 157 at 21. But the cases are not so broad, and the facts giving rise to the substantive due process claims there are very different than the facts alleged by Cook.

Accordingly, the Court grants the motion to dismiss Count III.

### 3.

Defendants argue that Count V, which alleges that they conspired to deprive Cook of his constitutional rights in violation of § 1983, should be dismissed because Cook fails to allege an agreement. Docket No. 146 at 25–26. Not so. The complaint includes numerous allegations that the individual Defendants agreed with one another and others—including, *e.g.*, Edward Jackson and Robert Wickham—to fabricate evidence, suppress exculpatory evidence, and lie to prosecutors, the courts, and the jury to frame Cook for Edwards's rape and murder. *See, e.g.*, Docket No. 122 ¶¶ 118, 125–27, 132–34.

That's sufficient to state a conspiracy claim under § 1983. *See, e.g.*, *Rodriguez v. Children's All. of S. Tex.*, 2018 WL 523213, at * 5 (W.D. Tex. Jan. 23, 2018) (denying motion to dismiss a civil conspiracy claim because the plaintiff alleged that defendants "conspired" with one another and others to violate plaintiff's civil rights).

### 4.

Defendants contend that Count I should be dismissed because it is based on Cook's Fifth Amendment rights and that the Fifth Amendment "applies only to the federal government." Docket No. 146 at 28. But Count I is not so limited. Count I

expressly states that Defendants violated Cook's due process rights "guaranteed by the Fifth and Fourteenth Amendments." Docket No. 122 ¶ 182. To the extent the citation to the Fifth Amendment is improper, the Court finds that it does not justify dismissing the entire Count.

**5.**

Finally, Defendants argue that "to the extent Plaintiff asserts any claim which is not a malicious prosecution [claim]," such claim is barred by the two-year statute of limitations. Docket No. 146 at 28; Docket No. 138 at 7–8.

The Court has already rejected this argument multiple times. In 2018, the Court squarely held that the same claims raised by Cook in an earlier complaint would not accrue "until the Court of Criminal Appeals vacates [Cook's] conviction and the State dismisses the indictment." Docket No. 89 at 7–17. Defendants in fact moved to dismiss the case based on this holding. *See* Docket No. 91. The Court granted Defendants' motion and dismissed the case, again stating plainly that "Cook's § 1983 claims have . . . not accrued and will not begin to accrue until the Court of Criminal Appeals vacates [Cook's] conviction . . . ." Docket No. 95 at 5; *see also id.* at 6 (Cook's "§ 1983 claims challenging Defendants' conduct in manufacturing evidence, withholding exculpatory evidence, and coercing witnesses to bear false testimony would undermine [his state court] conviction, which is still on review in the Court of Criminal Appeals."). The Court also expressly stated that the dismissal "does not prevent Cook from bringing these claims" once his conviction is vacated. *Id.* at 6. On appeal, the Fifth Circuit affirmed the Court's understanding of when Cook's

20

claims would accrue, stating: "because Cook's conviction has yet to be formally terminated in his favor, his causes of action concerning serious official misconduct have not yet accrued and will not begin to accrue until the Texas Court of Criminal Appeals vacates his conviction and the State dismisses the indictment against him." *Cook v. City of Tyler*, No. 19–40144 (5th Cir. Sept. 4, 2020); *see also id.* (noting that the dismissal of Cook's claims "does not prevent him from re-filing the same or similar claims at a later date").

Defendants articulate no reason to reconsider these holdings. Accordingly, their motion to dismiss the complaint as untimely is denied.

## VI.

Count VII seeks to hold the City of Tyler and Smith County liable for Cook's injuries.

Under § 1983, municipalities "may be liable where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). To state a claim of *Monell* liability, a plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Hou.*, 291 F.3d 325, 328 (5th Cir. 2002). When a plaintiff does not identify an officially promulgated policy, he must allege "a custom or practice 'so common and well settled as to

21

constitute a custom that fairly represents municipal policy,'" and that "'actual or constructive knowledge of such custom [is] attributable' to the policymaker." *Armstrong*, 60 F.4th at 276 (cleaned up) (quoting *Webster v. City of Hou.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Cook does not allege that the City or County had an officially promulgated policy contributing to his injuries. Rather, he relies on alleged "widespread practices" of unlawful conduct that were "so well-settled as to constitute the de facto policy" of the City of Tyler and Smith County. Docket No. 122 ¶ 220–21.

Both entities move to dismiss, arguing that these allegations are insufficient to state a *Monell* claim.

## A.

The City of Tyler makes two primary arguments for dismissal. Neither has merit.

The City first contends that dismissal is proper because the City Council is the City's only final policymaker, not the chief of police. Docket No. 143 at 6, 17. But "a court should not grant motions to dismiss for failing to plead the specific identity of the policymaker." *Groden v. City of Dall.*, 826 F.3d 280, 284–85 (5th Cir. 2016). In fact, "the specific identity of the policymaker . . . need not be pled." *Id.* at 284. So "it follows that actually naming a policymaker—even if the identification is ultimately erroneous—is not a basis for dismissal." *Gonzalez v. Webb Cnty.*, 2022 WL 190709, at *4 (S.D. Tex. Jan. 21, 2022) (citing *Mohamed ex rel. A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 616 (N.D. Tex. 2017)). In any event, the Fifth Circuit has routinely found that police chiefs may be policymakers for purposes of *Monell*

liability. *See Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) ("We have previously found that Texas police chiefs are final policymakers for their municipalities, and it has often not been a disputed issue in the cases.") (collecting cases); *see also Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (finding that a Texas city police chief was a final policymaker even when the city council retained oversight of the police chief); *Fraire v. City of Arlington*, 957 F.2d 1268, 1279 n.45 (5th Cir. 1992) (finding that a Texas city police chief was a final policymaker because he promulgated "all orders, rules and regulations for the department").

Second, the City argues that Cook did not adequately allege a widespread custom or practice under *Monell*. The Court disagrees. Cook alleges that the City's Police Department had an unwritten policy to rid the city of "undesirables" through fabricating evidence and suppressing exculpatory information. Docket No. 122 ¶¶ 144, 145, 149, 152–53. Cook states that, in 1979, "convictions involving over 100 defendants in drug-related cases were thrown out after it came to light that Tyler Police Department officers fabricated evidence and/or suppressed exculpatory evidence to cause convictions in violation of the individuals' civil rights." *Id.* ¶ 145. In many cases, Cook alleges, "Tyler police officers used the same tactics Defendants employed against Plaintiff in this case, including fabricating evidence and concealing exculpatory evidence to secure the arrest, prosecution, and conviction of a person without probable cause or regard for the person's guilt." *Id.* ¶ 146. Cook further alleges that the City "operated a dysfunctional disciplinary system for law

enforcement officers accused of serious misconduct," and he identifies a police officer who "has publicly acknowledged that a code of silence existed within the Tyler Police Department at that time" under which "officers refused to report and otherwise lied about their colleagues' misconduct." *Id*. ¶¶ 149–150.  Cook contends that these widespread practices of "regularly fail[ing] to disclose exculpatory evidence," "fabricat[ing] false evidence," elicit[ing] false and coerced witness testimony," and "pursu[ing] wrongful prosecutions and convictions" "were so well-settled as to constitute the *de facto* policy of the City of Tyler Police Department." *Id*. ¶¶ 220–21.

These allegations are sufficient to establish an unlawful custom or practice. *See, e.g.*, *Flanks v. City of New Orleans*, 2025 WL 660037, at *11–12 (E.D. La. Feb. 28, 2025) (finding that eight cases overturned for the same constitutional violations in the ten-year period before the plaintiff's wrongful conviction established a pattern of similar violations and the police chief's constructive knowledge); *Ettinoffe v. Sheikh*, 2022 WL 5200084, *5–6 (S.D. Tex. Oct. 4, 2022) (holding that the plaintiff properly alleged past instances of similar violations "necessary to establish a pattern representing a custom, on a motion to dismiss"); *cf. Piotrowski v. City of Hou.*, 237 F.3d 567, 583 (5th Cir. 2001) ("A pattern [of abuse] could evidence . . . the existence of a policy.").

The complaint also plausibly alleges that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden*, 826 F.3d at 285; *see also Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("[P]laintiffs can state a claim for municipal liability as long

24

as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy." (citation omitted)).  Given the widespread nature of the alleged civil rights abuses, it is plausible that the City and its final policymakers knew of and condoned the alleged wrongdoing.  Indeed, Cook alleges that "final policymaking officials" within the Tyler Police Department knew about "the pattern of alleged misconduct" detailed above, "failed to remedy the patterns of abuse," and "thereby perpetuated the unlawful practices."  Docket No. 122 ¶ 156.  The convictions thrown out in 1979, for example, "came to light" and were actually known or constructively known by City officials, and yet policymakers refused to take action and "were deliberately indifferent to the violations."  *Id.* ¶¶ 145–157, 222.  Cook further alleges that the former chief of police, Ronnie Malloch, knew that Mayfield was a plausible suspect in Edwards's rape and murder.  Malloch allegedly knew that Mayfield had failed multiple polygraphs and that he was found with a law enforcement treatise containing graphic depictions of sexual mutilation like the injuries the killer inflicted on Edwards—making it plausible that the City and its officials knew Mayfield was wrongly ruled out as a suspect in this case.  *Id.* ¶¶ 78–79.

The complaint, therefore, satisfies the second *Monell* element.  *See, e.g.*, *Flanks*, 2025 WL 660037, *9–12; *Ettinoffe*, 2022 WL 5200084, at *4 (at the motion to dismiss stage it is "enough" for a plaintiff to allege constructive knowledge because the violation was "frequent, prevalent, and widely known").

Finally, Cook sufficiently alleges a direct causal link between the alleged custom or practice and constitutional violations.  The factual allegations in the complaint allow the Court to draw the reasonable inference that the alleged practice "emboldened" Defendants to act in accordance with it, which means the practice was the "moving force" for the alleged constitutional violations.  *Howard v. City of Hou.*, 2022 WL 479940, *8 (S.D. Tex. Feb. 16, 2022); *see also Groden*, 826 F.3d 286–87 (explaining that the plaintiff alleged he was arrested according to the unlawful policy, thereby sufficiently pleading facts that the policy was the "moving force behind the city's alleged unsensational arrest").  Specifically, as noted above, Cook alleges that City police officers fabricated or suppressed evidence to secure more than 100 other criminal convictions, the City knew of this widespread practice but failed to discipline officers for their unconstitutional acts, and the City's inaction emboldened other officers to freely violate the civil rights of civilians.  Docket No. 122 ¶¶ 145, 148–49, 151–52.  As Cook alleges, but for the City's unlawful custom or practice, his rights would not have been violated here.

Accordingly, the City's motion to dismiss is **DENIED**.[5]

### B.

The claim against Smith County, however, is problematic.  The Court has already held that the complaint lacks any specific allegations against former Smith

---

[5] In a single sentence without citing any authority, the City also argues for the dismissal of Count VIII, which seeks indemnification from the City under local law.  Docket No. 143 at 18.  Because this argument is not adequately briefed, the Court need not address it.  *See, e.g.*, *Wilson v. City of Mission*, 2020 WL 2079359, at *10 (S.D. Tex. Apr. 30, 2020) ("[A]rguments asserted without citation to authority or left undeveloped are waived."); *Givens v. Berryhill*, 2018 WL 1955289, at *4 (N.D. Tex. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 1942385 (N.D. Tex. Apr. 25, 2018).

County Sheriff J.B. Smith. *See supra*, Section III.2. In fact, the only allegation against any County employee is a brief reference to Sheriff's Deputy Robert Wickham who allegedly "worked with Defendant Eric Liptak[] to create false documents" that Cook had confessed to killing Edwards. Docket No. 122 ¶¶ 132–33. While troubling, this single incident cannot support "a custom or practice 'so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Armstrong*, 60 F.4th at 27. All other allegations in the complaint are against Tyler police officers— not County employees. The convictions overturned in 1979, for example, were allegedly the result of "Tyler Police Department officers fabricat[ing] false evidence and/or suppress[ing] exculpatory evidence to cause convictions." Docket No. 122 ¶ 145; *see id.* ¶ 146 (alleging that "Tyler police officers used the same tactics Defendants employed against Plaintiff in this case"). And the "code of silence" used to suppress misconduct was allegedly one that "existed within the Tyler Police Department," not the Smith County Sheriff's Office. *Id.* ¶ 150. Thus, although the complaint alleges in a conclusory fashion that the County had a "widespread practice" similar to the City's, there are no factual allegations to support it. *See, e.g.*, *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (The policy and conduct must be "properly attributable to the municipality."); *Gonzales v. Nueces Cnty.*, 227 F. Supp. 3d 689, 705 (S.D. Tex. 2017) (finding that a municipality must be dismissed when, among other things, plaintiff fails to plead similar instances, and the complaint was "devoid of any details" to present an actionable claim).

Accordingly, the Court grants the County's motion to dismiss.

## V.

Before concluding, the Court admonishes counsel to ensure that their briefing in this case going forward correctly states the law, exhibits full candor with the Court, and presents arguments in a cogent and efficient manner. Thus far, counsel have failed on each point.

First, several points of law were inadequately briefed. Counsel for Cook argued, for example, that there is no obligation to include "specific allegations as to which defendant officer did what" in overcoming qualified immunity, wholly ignoring Fifth Circuit authority to the contrary. *See* Docket No. 157 at 6. And Defendants' arguments about the "independent intermediary doctrine" were incomplete to say the least. *See* Docket No. 146 at 13.

Defendants' argument regarding the statute of limitations, moreover, is an example of questionable candor. Defendants misrepresented the Court's prior holdings on the issue, ignored the Fifth Circuit's decision in this case, misstated Cook's position, and then claimed that "all but part of Count II" is now time-barred. *See* Docket No. 146 at 28. This type of advocacy hurts counsel's credibility and imposes unnecessary burdens on the Court.

And the City of Tyler's brief is anything but cogent and efficient. The City asserts, for example, that Cook challenges the "Tim Cole Act . . . but has failed to give proper notice to the Texas Attorney General regarding his challenge." Docket No. 143 at 12. The City spends more than a page on this fictitious, meritless point, wasting the Court's time and needlessly confusing the issues. The City's key argument,

28

moreover, is buried in a series of paragraphs simply reciting Cook's allegations against it. Briefing should always be clear and concise, but in a case with nearly a thousand pages of materials, succinctness is imperative.

The Court recognizes that counsel have a duty to zealously defend their clients. But that duty can and should be performed without unduly burdening judicial resources.

## VI.

In conclusion, the Court **GRANTS** the motions to dismiss all claims against individual Defendants J.B. Smith, Robert Bond, Kenneth Findley, Nelson Downing, Ronald Scott, and Fred Mayo because they are entitled to qualified immunity. Docket Nos. 135; 146; 167. These individuals are **DISMISSED**. The Court **DENIES** the motions to dismiss individual Defendants Eddie Clark, Eric Liptak, Gerald Hayden, and Marvin McLeroy based on qualified immunity. Docket Nos. 146; 138.

The Court further **GRANTS** the motion to dismiss Count III, the substantive due process claim, and Count VI, the failure to intervene claim, against all Defendants because Cook failed to state a claim under these Counts. Docket Nos. 146; 167. Counts III and VI are thus **DISMISSED**.

And, finally, the Court **GRANTS** Smith County's motion to dismiss Count VII Docket No. 135. Count VII is hereby **DISMISSED** against Smith County only.

All other motions to dismiss are **DENIED**. Docket Nos. 138; 143.

**So ordered and signed on this**

**Aug 21, 2025**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE